PROTHO *v.* WILLIAMS.

Opinion delivered February 28, 1921.

1. EMINENT DOMAIN—REMEDY OF LANDOWNER—EVIDENCE.—In an action for damages to land by the routing of a ditch by a landowner, the preponderance of the evidence *held* to establish that the commissioners of the district misled plaintiff into failing to make timely objection to the orders establishing the route of the district and confirming the assessment of benefits by promising her either to change the route of the ditch or to give her notice that the route would not be changed.

2. EMINENT DOMAIN—FAILURE TO MAKE TIMELY OBJECTION—ESTOPPEL.—Where the commissioners of a drainage district misled a landowner into believing that they would either change the route of a proposed ditch or would notify her that they would not do so, and she in good faith failed to present her complaint to the county court against the assessment of benefits, and the commissioners failed to assess damages in her favor, she is entitled to damages against the district, and will not be barred by her failure to present her complaint to the county court within time.

3. EMINENT DOMAIN—ASSESSMENT OF BENEFITS OR DAMAGES—LIMITATION TO COMPLAINTS.—Provisions in Crawford & Moses' Digest, §§ 3615, 3617, as to the time in which a landowner may make complaint of assessment of benefits or damages in a drainage district, were not intended to deprive a property owner of the right to complain of such assessments where she was led into not making such complaint by the conduct of the commissioners of the district causing her to believe that the route of the ditch would be changed.

4. DRAINS—POWER OF COMMISSIONERS TO ALTER LOCATION.—Under Acts 1913, No. 177, § 2, commissioners of a drainage district

have power to alter the location of a ditch at any time before constructing the work, even after a judgment of the county court is rendered confirming assessment of benefits.

5.  Drains—illegal assessments—equitable remedy.—Equity had jurisdiction to set aside and cancel an illegal assessment of benefits and damages resulting from construction of a drainage ditch, and, at a landowner's instance, to restrain the collection of those assessments, and, having jurisdiction for that purpose, it also had jurisdiction to award the landowner damages.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*Chas. Jacobson*, for appellant.

Appellants by their conduct did not lead appellee to believe that they were going to change the route of the ditch. There is no proof of misrepresentation or deception. Appellee had an opportunity for her day in court, which she chose to ignore, and the court erred in sustaining the demurrer and granting the injunction. 224 S. W. 334. The county court had power to change the location of the ditch and the route. 91 Ark. 79; 120 S. W. 402; Drainage act of 1909, § 8. The demurrer should have been sustained, as the chancery court had no jurisdiction. All those matters are for the county court. Appellee should have protested, as she and her counsel had ample notice and had full knowledge of all the facts and records.

*Chas. T. Coleman, W. H. Pemberton* and *W. G. Riddick*, for appellee.

1. Appellee is not estopped by the statute bar of thirty days in which she should have made protest against the assessment of benefits. The doctrine of estoppel is as old as the law itself, and has often been applied. 36 Ark. 96; 99 *Id*. 260; 91 *Id*. 141. The doctrine has often been applied to prevent the bar of the statute of limitation. 60 Ark. 491; 80 Ky. 309; 33 Miss. 173; 56 N. H. 143; 65 Mo. App. 55; 71 *Id*. 299; 7 N. H. 494; 91 N. C. 398. This doctrine may be invoked by waiver. Wood on Limitations, § 49; 61 S. W. 386; 54

*Id.* 689. The case in 74 N. E. Rep. 123, is a very similar case to this and supports our contention.

2. The cases cited for appellant do not sustain his contention. 91 Ark. 31; *Ib.* 79.

3. Mrs. Williams was misled by the acts and word of the commissioners and properly acted upon them.

4. She was misled by what the commissioners said and what they did. Under the law the Legislature may levy benefit assessments directly or through a board of commissioners until the indebtedness of the district is paid. 139 Ark. 4; Sand. & H. Digest, § 5855.

5. The commissioners promised to notify Mrs. Williams if a change was not made and they failed.

6. The findings of the circuit court on questions of fact are conclusive as the verdict of a jury. 35 Ark. 445. Where the evidence is conflicting, the finding is conclusive. 84 Ark. 406; 90 *Id.* 100; 122 *Id.* 43. The chancellor's finding will not be disturbed on appeal unless against the clear preponderance of the evidence. 129 Ark. 583; 181 S. W. 913; 121 *Id.* 295. See, also, 91 Ill. 273.

WOOD, J. This action was brought by the appellee against the appellants as commissioners of the Faulkner Lake Drainage District. She alleged in substance among other things that the district was created September 18, 1916; that she owned certain lands in the district (described in her complaint); that the benefits assessed against her property were $5,004.50; that the assessed valuation of her property was $8,600; that before and after the expiration of the thirty day period within which she had the right to make protests in the county court against the action of the commissioners in the assessment of benefits or damages, or to acquiesce therein, she took up with the commissioners the change of the route of the ditch in an endeavor to have them locate the same between her place and the Kline place instead of the place where it is now located; that she represented and showed to the commissioners that the route they had selected would do her property great

damage and pointed out to them a more suitable location; that the commissioners represented to her that they would take up the matter of changing the route of the ditch according to her suggestion and expressly stated to her that they would not locate the ditch where it is now located; but, if they did not change the location, they would so inform her; that she relied wholly upon these assurances of the commissioners that they would notify her if they allowed the ditch to remain where they had located it, and she continued to so rely until the time expired for her to protest. She alleged at length and in detail the various conversations that she had with the commissioners and the attorney for the district, and, among other things, stated that as late as March or April 1917, the commissioners through their attorney, told the attorney of the plaintiff to tell the plaintiff that she need not worry any more about the location of the ditch; that the commissioners had agreed to locate it in accordance with her suggestion; that her attorney so notified her, and neither he nor she gave the matter any further thought until some months afterward, to-wit, on the 24th day of August, 1917, at which time she learned that machinery was being placed on the ground at the point where the ditch is now located and on the route where the commissioners assured her the ditch would not run; that at that time her regular attorney was absent, and she employed another attorney, and at her request a meeting of the board of commissioners was called within a few days thereafter, and at that meeting the commissioners again assured the plaintiff that they had not decided where the ditch would be located, and that they would notify her when they did so. There is also an allegation in the complaint to the effect that the commissioners had the right to change the route of the ditch at any time and to revise the assessments in accordance therewith, and that it was provided in the contract for the construction of the ditch that the location, distances, and number of lateral ditches may be

altered by the commissioners prior to or after the work had commenced, showing that the commissioners reserved the right to change the location of the ditch at any time as they had agreed to do with the plaintiff. She also alleged that the commissioners utterly failed and refused to keep their word to her; that, through the representations and assurances of the commissioners and their attorney, she was misled, deceived and lulled to rest; that the commissioners, notwithstanding these assurances and promises, proceeded to have the ditch constructed over the route where they had first located the same; that the commissioners thereby perpetrated a fraud upon her by which her property was taken and damaged. She set forth specifically the items of her damage, which amounted in the aggregate to the sum of $30,000, for which she prayed judgment. The commissioners answered, setting up the legality of the district, alleging that they had proceeded in all things as the law required in such cases, and specifically denied that they had by any word or act of theirs in any manner misled or deceived the plaintiff as to the route of the ditch. They denied that they had ever agreed to change the same as requested by her, or that they had ever led her to believe that the change would be made, and specifically denied the allegations of fraud. They alleged that plaintiff and her attorney had full knowledge of the route of the ditch where it was finally located in ample time to make their protests to the county court, and that plaintiff had ignored her remedy in that court until long after the time for making such protests had expired. They specifically denied the allegations of damage and prayed that the complaint be dismissed for want of equity.

The testimony on the issues raised was heard *ore tenus* by the trial court, which rendered a decree in favor of the appellee against the appellants in the sum of $11,040, with interest, and restraining them from the further collection of assessments, from which decree is this appeal.

The first questions presented by this appeal are whether or not the appellants as commissioners by their conduct led the appellee to believe that they were going to change the route of the ditch so as to locate it between her place and the Kline place, instead of between her place and the Spence place where it was finally located, and whether or not they told her that if they did not make such change she would be notified. These are purely questions of fact, and it could serve no useful purpose to set out in detail the testimony concerning them. The testimony shows that the district was established September 16, 1916. The assessment of benefits was filed with the county court October 9, 1916. Notice was duly given of the filing of such assessment, as the statute requires, and November 14, 1916, was set for the hearing on the assessments.

The uncontradicted testimony shows that, prior to the order of confirmation, the appellee had protested against the route of the ditch as laid out by the commissioners and finally adopted by them. The undisputed testimony also shows that she continued to protest against the location after November 14, 1916, up until the work on the ditch was begun, but there is a sharp conflict in the testimony as to whether or not the commissioners gave the appellee to understand that the route as originally fixed would be changed, and if not changed that she would be notified. The appellee testified positively that she had various conversations with the commissioners and their attorney, and that they told her when she first went to them (which was long before November 14, 1916,) that they would take it up with the engineer and place the ditch somewhere else, if it possibly could be done. They had already determined on the advisability of putting it where it now exists, and after witness pointed out the way it would affect her homestead they said "if they found out there was no other way to go and they had to go that way, the way it now is, they would advise me." This they said

at the first meeting, which was at Mr. Jacobson's office (May 10, 1916). Her testimony further shows that they had cleared a right-of-way between the Kline place and witness' place on the route that witness desired to have the ditch run, and witness was led to believe from this that they intended finally to adopt that route, and witness didn't know that the commissioners had finally located the route where it now is until they unloaded the machinery on the ground. In response to witness' first objection to the location, they had cut the right of way between Mrs. Kline's place and witness' place. In August, 1917, when they began to unload the machinery, witness discovered that appellants had not changed the location. Witness was not sure until then that they intended to finally locate the ditch where it is now located. After the district was organized, witness employed Colonel House to represent her and later, in the summer of 1917, she employed Mr. Pemberton.

The testimony of the commissioners was to the effect that, while they had frequent conversations with the appellee, who was protesting as to the location of the ditch, they never intended by any word or act of theirs to give her the impressoin that any change would be made. They never told her, and no one was authorized by them to tell her, that they would make a change, and that if they did not make such change they would notify her. The commissioners were anxious to accommodate her, if possible, provided it was consistent with the best interest of the district, but the route had been fixed by the engineer after a thorough investigation and the ditch finally constructed as originally located. There was a meeting at the home of Mr. Galloway, one of the commissioners, on February 26, 1917, at which the entire matter was discussed, and it was again agreed that no change would be made, and on that day the attorney for the district was instructed by the commissioners to write the attorney of the appellee to that effect, which was done. Such was the purport of the testimony by the

commissioners and the attorney of the district. The engineer of the district also testified that he never made any statement that would lead the appellee to believe that any change would be made in the route of the ditch other than the report he sent back to the board—if they could agree on the damages between the two places. No one else in his presence made any such statement to her or that would lead her to believe that, at least they did not intend to. It was their intention to deal as fairly with her as they could.

On the other hand, Col. House, one of the attorneys for the appellee, testified that in February or March, 1917, the commissioners represented to appellee that if they concluded to locate the ditch where it is at present they would notify her; that the attorney for the district told witness to tell the appellee that she needn't worry any longer; that the commissioners had agreed to build the ditch where she wanted it.

Another one of her attorneys, Mr. Pemberton, testified that at a meeting at Mr. Jacobson's office when all the commissioners were present, and the witness, representing the appellee, was protesting against the location of the ditch where it is at present located, the commissioners said if they could make a change without serious detriment, that is, locate the ditch between the Kline place and appellee's place, they would be very glad to do so, and that, if it was put anywhere else than between those places, they would notify the appellee. After that witness paid no attention to the matter until he was advised by appellee that they had actually begun the construction of the ditch. The reason that the appellee did not take any further action was because of what the commissioners had told witness and their promise to notify appellee if the ditch was to be put where it now is. Witness relied upon that promise absolutely; that was his purpose in going to the meeting—the only thing that he had in view. This was more than a year after November 14, 1916. Within thirty days after the machinery

was put on the ground and they began to dig the ditch, witness brought this suit.

It occurs to us that, although the plat had been filed on September 16, 1916, showing the route that was then contemplated by the commissioners, and, although the judgment of the county court was entered on that day establishing the district, and although the judgment of the county court was thereafter entered on November 14, 1916, confirming the assessment of benefits and showing that no protest was made by the appellee, nevertheless a clear preponderance of the evidence does show that the commissioners had not at either of those dates definitely decided that they would not change the location of the ditch from that shown by the plat then on file. For, if they had at that time definitely fixed the location why would they afterward have taken the matter up with the appellee and her counsel with a view of changing the location and placing the ditch, if possible, where the appellee desired that it should go? That they did do this, there can be no sort of doubt, as shown by the testimony of Col. House, Mr. Pemberton, and the appellee. That they had not finally decided the matter until as late as February 26, 1917, is also proved by the testimony of the commissioners themselves and their attorney to the effect that on the 26th day of February, 1917, they met at Mr. Galloway's, one of the commissioners, and there decided that they would not change the route as shown by the plat and as originally contemplated, and instructed their attorney, Mr. Jacobson, to write to Col. House, the attorney for the appellee, that they had concluded that it was impracticable to locate the ditch as desired by the appellee, and that it would be best to locate it as originally planned. This letter itself shows that the commissioners had not reached a final decision because it states that "the commissioners said they would be glad at any time to again visit the place with you and Mrs. Williams and discuss it, because they felt that it would be to her interest to locate it there."

The testimony of the appellee and of Mr. Pemberton and of Col. House was to the effect that they did afterward discuss it and led appellee to believe that, if they did not change it as she desired, they would notify her. We conclude, therefore, without further discussion of the facts, that the preponderance of the evidence shows that the commissioners by their conduct led the appellee to believe that the route of the ditch was not definitely fixed at the time the judgment of the court was rendered establishing the district, nor at the time when the judgment was rendered confirming the assessment of benefits; but, on the contrary, that the location might be changed to conform to appellee's wishes, and that if such change were not made she would be notified.

The next question is: Are the commissioners estopped from claiming that the appellee is barred from maintaining this action because she did not present her complaint to the county court complaining of the assessment of benefits, and did not within twenty days appeal from the judgment of that court confirming the assessment of benefits? To hold otherwise would be to enable the commissioners to take advantage of their own wrong and the district, which can only act through its commissioners, to profit by such wrong. If the commissioners by their acts or words led the appellee to believe that they would change the location of the ditch in controversy and that, if they did not make such change, they would notify her, and if their conduct was such to justify her in acting upon such assurances and she in good faith did so act and thereby failed to present her complaint to the county court against the assessment of benefits and the failure of the commissioners to assess damages in her favor, then unless she has a remedy in equity to restrain the further levy of assessment against her property and compensation for the property already taken and for damages to that not taken, she is deprived of her rights under the Constitution. "Private property shall not be taken, appropriated or damaged for public use without

just compensation therefor.'' Art. 2, sec. 22, the Constitution.

The declaration of the above provision of our Constitution that ''the right of property is before and higher than any constitutional sanction, that same shall not be taken or damaged without just compensation, is but the recognition of the fundamental principles of natural right and justice lying at the basis of all wise and just governments independent of all written constitutions or positive law.'' *Cairo & Fulton Rd. Co.* v. *Turner,* 31 Ark. 494, 500. The conduct of the commissioners, although not intended to deceive or to mislead the appellee, nevertheless had that effect, and to enable them or the district through them by virtue of this conduct to deprive her of her property would be perpetrating a fraud upon her through the forms of law.

This drainage district was created under act 279 of the Acts of 1909, and act 221, Acts of 1911, as amended by act 177 of the Acts of 1913. (Crawford & Moses' Digest, §§ 3607-3655). The time given under the first section of the latter act to the property owner for making complaint against the assessment of benefits and damages and for taking an appeal from the judgment of the county court on such assessment is exceedingly short, even when there are no mistakes or irregularities on the part of the commissioners, either in the manner of formulating the plans of the district or the assessment of benefits and damages. Where there are such mistakes or irregularities, it could never have been contemplated by the framers of our drainage statutes that the property owners should be bound thereby. These provisions of course contemplate that the commissioners should proceed in the regular manner prescribed by the statute and without any conduct on their part, intentional or unintentional, which is calculated to deceive or mislead property owners to their detriment and cause them to fail to avail themselves of the provisions of the statute made for their benefit. As is said in *Matter of Application of*

*Mayor,* N. Y., 4 Sicvkels 150-154: ''The statute plainly never intended to give a vested interest in a mistake, an irregularity or a fraud, whereby important rights of property were acquired or lost.''

Section 17 of act 177 of the Acts of 1913, under which the drainage district under review was created, provides: ''Commissioners may at any time alter the plans of the ditches and drainage, but, before constructing the work according to the changed plans, the changed plans, with accompanying specifications, showing the dimensions of the work as changed, shall be filed with the county clerk, etc.'' Crawford & Moses' Digest, § 3625. Doubtless both the appellants and the appellee were proceeding upon the theory that the commissioners would have the right under the above statute to change the route of the ditch at any time before the actual work of constructing the ditch began. This was the correct theory, for, under section 4, act 279 of the Acts of 1909 as amended by section 4 of act 221 of the Acts of 1911, which section was in no manner altered by act 177 of the Acts of 1913, it is expressly provided: ''Such plans and specifications shall show not merely the location, width and depth of the ditches, but the work to be done in removing obstructions, etc.'' Therefore, the commissioners have the power under section 17 of act 177 of the Acts of 1913, *supra,* to alter the location of the ditches and drainage at any time before constructing the work by complying with the terms of that section.

Counsel for the appellants relies upon the cases of *Chapman & Dewey Land Co.* v. *Wilson,* 91 Ark. 30, and *Williams* v. *Rutherford,* 91 Ark. 79, as authority for his contention that the commissioners had no power to change the location of the ditch after the judgment of the county court was rendered confirming the assessment of benefits and damages on November 14, 1916. In the first of the above cases the drainage district was established under the act of April 23, 1891, sections 1203-1232, Sandels & Hill's Digest, the latter section of which pro-

·vides among other things that such order or judgment of the county 'court establishing the district shall be conclusive that all prior proceedings were regular and according to law. The district in the last case was established under the act of April 23, 1903, sections 3569-3606, inclusive, of Crawford & Moses' Digest. In *Williams* v. *Rutherford, supra,* we construed the provisions of this act to mean that the county court had power to change the location of the ditch at any time before it finally approved the assessment of damages and benefits. But in neither of the above cases was there a provision in the statute under which the districts were established similar to section 17 of act 177 of the Acts of 1913 (Crawford & Moses' Digest, § 3625), here under review, which we have seen gives the commissioners the power at any time to alter·the plans before constructing the work.

We conclude, therefore, that the commissioners are estopped from asserting that the appellee is barred by the limitations contained in the act, and the decree of the ·chancery court so holding was correct. *Kreiling* v. *Northrup,* 215 Ill. 195, 74 N. E. 123. See, also, *Newton* v. *Carson,* 80 Ky. 309; *Davis* v. *Hoopes,* 33 Miss. 173; *Swafford Bros.* v. *Curtis Goss,* 65 Mo. App. 55; *Mo. Pac. Ry.* v. *B. F. Combs & Bro.,* 71 Mo. App. 299; *Purkins* v. *Coleman,* 5 Miss. 298; *Barcroft* v. *Roberts,* 91 N. C. 363; *Daniels* v. *Board of Commissioners,* 74 N. C. 494.

The last question is as to the amount of damages. The court had jurisdiction to set aside and cancel the assessment of benefits and damages and to restrain at the instance of the appellee the collection of these assessments, and, having taken jurisdiction for this purpose, it also had jurisdiction to award her damages. *Horstman* v. *Lafargue,* 140 Ark. 558, and other cases there cited. As to the amount of damages, it is also purely a question of fact, upon which there was some conflict in the testimony; but after a careful review of all the evidence, we are convinced that a preponderance of the testimony shows that the appellee was entitled to

the amount she recovered. The decree is therefore in all things correct, and it is affirmed.

McCulloch, C. J. and Smith, J., dissenting.

McCulloch, C. J. (dissenting). The statute under which the drainage district was organized and carried on its operations in this instance (Crawford & Moses' Digest, § 3607 *et seq.*) provides that the commissioners shall form plans and file the same with the county clerk accompanied by "a map showing the location of all main and lateral ditches" and by "specifications fully describing the character of the improvements to be made, the width and depth of the ditches, the probable quantity of earth to be removed and all other work to be done;" that the commissioners shall then proceed to assess benefits to the lands in the district and the damages thereto, if any, and shall file with the county clerk a list or report of such assessment, and that upon the filing of such assessments "the county clerk shall give notice of the fact by publication two weeks in some weekly newspaper. * * *" The statute further provides that any owner of property in the district who is aggrieved by the assessment of benefits or damages may present his complaint to the county court and may, within twenty days, take an appeal to the circuit court from an adverse judgment of the county court. It also provides that if an owner of property does not accept the assessment of damages made by the commissioners, he may, within thirty days after the filing of the assessment give notice in writing that he demands an assessment of damages by a jury.

The assessments of benefits and damages are necessarily made with reference to the plans and specifications on file with the county clerk and all property owners in the district must take notice of those plans, which include the route of the ditch.

There is a provision in the statute authorizing the commissioners to alter the plans, but that, if by reason of

such change the original assessments are found to be inequitable, there shall be a reassessment at the instance of either the commissioners or any property owner. Crawford & Moses' Digest, § 3625. The commissioners of such district have only such powers as the statute confers in express terms or by necessary implication. They do not deal with the owners of the property in the district in any private capacity, and all who deal with them must take notice of their powers. All the property owners in the district must take notice of the proceedings and are interested in any changes to be made. Publicity of these proceedings is required, and places are indicated where property owners may obtain information. Interested parties have no right to rely on promises made to them privately as to what the future proceedings will be. Appellee knew that the route had been selected, and she also knew what the powers of the commissioners were under the law with reference to making changes. She had no right to rely upon alleged promises that a change would be made or that she would be notified if a change should not be made. Hardships may result in rare cases on account of misunderstandings with or broken promises of the commissioners, but this results from the failure of the property owners to resort to the protection afforded by law, and it is a dangerous thing to go beyond the limits of the law to afford protection.

I am unable to discover any principle under which appellee can be given relief against the district from the result of the alleged broken promise of the commissioners to change the route. If there is any remedy at all, it is against the commissioners personally and not against the district.