### SIMS *v.* HAMMONS.

### Opinion delivered March 27, 1922.

LANDLORD AND TENANT—JURISDICTION TO ENFORCE LANDLORD'S LIEN.— Under its general power to enforce liens, equity has jurisdiction to enforce a landlord's lien, and, having acquired jurisdiction for that purpose, it may proceed to assess damages resulting from delay in threshing a rice crop and delivering his share to the landlord.

Appeal from Prairie Chancery Court, Southern District; *John M. Elliott,* Chancellor; affirmed.

*W. A. Leach,* for appellant.

1. Chancery has no jurisdiction. The landlord's lien is of statutory creation, exclusively. The statute prescribes an adequate and complete remedy. Sedgwick on Statutory and Constitutional Law, §§ 342, 343; 73 Ala. 390; 1 Cyc. 707; 1 R. C. L. 323, § 9; Rev. Statutes (Ark.) ch. 88, §§ 11, 12, 13; C. & M. Digest, §§ 6559, 6560 and 6561; 7 Ark. 305; 10 *Id.* 602; 24 *Id.* 545; 25 Cyc. 681; 17 R. C. L. 613, § 26; 4 L. R. A. 531.

2. That damages to a growing crop are not remote and speculative, and may be made the basis of an action, is well settled. Likewise the rule by which these damages are to be measured. 6 A. & E. Ann. Cas. 946; 136 Ark. 231. It was competent for the appellant to estimate what the yield of rice would have been had the water supply been sufficient, basing his statements on his own crops raised in 1918 and the crops raised on the leased premises in 1917. 57 Ark. 512.

In arriving at the amount of damages or the value of the crop destroyed, it is proper to consider the hazard to which the crop is subjected, and the likelihood of its having ultimately matured. 56 Ark. 612.

*John L. Ingram and Meek & Meehan,* for appellee.

1. Equity has jurisdiction. It had it under the original statute creating the landlord's lien, and the fact that similar jurisdiction was subsequently conferred upon courts of law does not divest the original jurisdiction of equity. The present statute, C. & M. Digest, § 6889, enacted in 1868, is but a reenactment of the statute of 1837. 30 Ark. 568; 56 *Id.* 544; 115 *Id.* 230; 36 *Id.* 575; 44 *Id.* 108; 48 *Id.* 355; 72 *Id.* 143.

2. As to the extent of appellee's obligation to furnish water, the parties must be held to have contracted with reference to the specific sources of water, and the distinction should be kept in mind between an undertaking to furnish a stipulated quantity of water, and such an undertaking where there is no express agreement or warranty that the well or wells will furnish all the water necessary. 13 Corpus Juris, 640.

3. A party breaching a contract cannot maintain an action thereon.

Sims, in order to recover, must show that his loss was due to Hammons' breach of the contract. If there were mutual violations of the contract, both tending to diminish the crop, appellee ought not to be held for the entire loss. But, in this case, an adjustment of the equities is impossible, as it presents problems which are purely speculative. Appellant should be denied recovery on account of any breach by appellee.

SMITH, J. Appellee was the owner of a tract of land containing 540 acres, which he rented to appellant for the year 1918 to grow a rice crop, under a verbal lease, about the terms of which the parties disagree. The chief point of difference relates to the quantity of water appellee was to furnish; and we think the testimony supports appellant's contention in this respect. With this point settled, the contract may be stated as follows: Appellee was to install a new well and furnish the water necessary for making the rice crop, in the weir ponds or pools. He was also to furnish one-half the seed rice,

one-half the sacks and twine, pay one-half of the thresh-
ing bill, and receive one-half the rice as rent. Appellant
was to seed the land, distribute the water, cultivate and
harvest the crop, furnish one-half of the seed rice and
half the twine and sacks, pay half the threshing bill,
and receive one-half the crop as his share, and deliver to
appellee the other half either at LaGrue station or in
the warehouse on the leased premises.

It is contended by appellee that appellant grew and
harvested a crop of 20,000 bushels, but that appellant did
not properly care for the rice after growing it, thereby
losing about 9,000 bushels, one-half of which would have
gone to appellee, and this suit was brought in equity to
recover the value of the rice thus lost and to enforce a
lien upon appellee's part of the crop which had been
withheld from him by appellant.

Appellant denied that the crop amounted to 20,000
bushels, and denied that any part of the crop was lost by
a failure on his part to properly care for the rice. He
alleged, by way of cross-complaint, that appellee had
failed to furnish a sufficient amount of water, whereby
153 acres which had been properly seeded were lost be-
cause of the lack of water, and there was a prayer for
damages for appellant's interest in the rice thus lost.

The original complaint alleged a failure by appellant
to deliver to appellee his share of the rice, and there was
a prayer for the appointment of a receiver, which appli-
cation was later withdrawn.

It was contended by appellee that appellant failed
to harvest and thresh a large quantity of the rice which
was grown, and had failed to deliver appellee his part
of the rice which had been threshed, and that under the
contract his part of the rice should have been delivered at
threshing time, and that on account of the rice being held
by appellant beyond that time the rice which was de-
livered was damaged and was worth less on the market
than it was worth when delivery was due.

Appellant moved to transfer the cause to law, and
assigns as error the refusal of the court to grant that
motion.

We think the testimony shows that appellee failed to furnish the proper amount of water as required by the contract. But we think it appears with equal clearness that appellant did not conserve and properly use the water which was furnished. This was due chiefly to the failure to properly maintain the various levees necessary to distribute the water over the entire crop.

The undisputed testimony shows there was a large acreage on which the crop did not mature for the lack of water and which was never cut, and, as we have said, this resulted from concurring breaches of the contract by the respective parties.

In a written opinion on the facts, the court below found that "to determine how much rice might have been grown on this land if it had been properly watered, and how much should have been saved if it had been properly threshed, would require the court to enter the realm of speculation. The testimony regarding these matters is not sufficiently definite and certain to form the basis of a judgment in behalf of either party."

We concur in this view; but each of the parties is so far responsible for the failure to mature the crop which would otherwise have been grown that neither can recover from the other, as we are unable to apportion the consequences flowing from the respective breaches of the contract.

The court below found, however, that appellee received 3,499 bushels of rice, for which he should have received $2 per bushel, or $6,998, but for which he actually received only $5,492.03, and judgment was rendered against appellant for $1,505.97, the difference. The court found that the damage resulting in this difference was caused by appellant's unnecessary delay in harvesting the rice and in threshing it while wet and in holding it in storage after he should have delivered it to appellee.

The testimony is conflicting upon these questions of fact, but, without setting out this testimony, we announce

our conclusion to be that the finding of the court below thereon is not clearly against the preponderance of the evidence.

The question, however, which is most strenuously insisted upon, and which might properly have been first disposed of, is that of jurisdiction. It is earnestly insisted that the cause should have been transferred to law, as this is nothing more than a suit to enforce a landlord's lien and to recover damages, and that as the lien is of statutory creation, and as the statute which creates it provides a remedy for its enforcement by a suit at law, that remedy is exclusive.

In response to this insistence, it is pointed out that the statute giving a landlord a lien as reenacted in 1868 (the existing law) is identical with the first statute giving a landlord a lien, which was enacted in 1837, and that the statute providing for enforcement of the lien by an attachment proceeding was not enacted until 1860.

But, aside from this, equity had jurisdiction under its general power to enforce liens. We have frequently so decided in construing the statute on mechanics' liens. The statute creating the mechanics' lien provides that "all liens created by virtue of this act shall be enforced in the circuit court of the county wherein the property on which the lien is attached is situated, * * * * *." (Section 6925, C. & M. Digest); yet we have frequently held that such liens are enforceable in equity notwithstanding the remedy given at law for their enforcement. Among the cases where the question of jurisdiction was considered in the enforcement of a mechanic's lien is that of *Martin* v. *Blytheville Water Co.*, 115 Ark. 230, where we said: "Again, it is contended by counsel for the intervener that he could not assert his lien after the receiver was appointed, because, under § 4983 of Kirby's Digest, liens acquired by virtue of the mechanics' lien act must be enforced in the circuit court of the county where the property on which the lien is attached is situated. In Rockel on Mechanics' Liens, § 198, the author says that the act usually provided by

statute is not regarded as giving exclusive remedy, but that it is merely cumulative, and the debtor may pursue whatever other remedy he may have to secure payment of his debt, and in support of the text, cites *Murray* v. *Rapley,* 30 Ark. 568. In the case of *Kizer Lumber Co.* v. *Moseley,* 56 Ark. 544, the court also held that an action to foreclose a mechanic's lien can be brought in the chancery court." See also *Carr* v. *Hahn & Carter,* 126 Ark. 609.

No lien was claimed on the crop for the amount of the damages caused by delay in threshing the rice and delivering appellee his part of it. *Few* v. *Mitchell,* 80 Ark. 243; *Stephenson* v. *Lewis, ante* p. 361.

But, having acquired jurisdiction of the cause for the purpose of enforcing the landlord's lien, no error was committed in assessing these damages. *Horstmann* v. *LaFargue,* 140 Ark. 558.

Decree affirmed.