**BROOKS et al. v. SUPERIOR OIL CO.**

No. 536.

United States District Court
W. D. Arkansas, El Dorado Division.

Dec. 3, 1952.

See also, 198 F.2d 89.

Bernard Whetstone, El Dorado, Ark., for plaintiffs.

Davis & Allen, El Dorado, Ark., H. W. Varner, Houston, Tex., for defendant.

JOHN E. MILLER, District Judge.

Formal findings of fact and conclusions of law, separately stated, have been filed herein. Only such of the facts as are necessary to a clear understanding of the contentions of the respective parties will be referred to in this discussion.

The suit was filed by plaintiffs in the Circuit Court of Ashley County, Arkansas. They alleged that the defendant had converted certain oil and gas leases on land situated in Ashley County, and also certain pipe and other equipment situated on said leases upon which the plaintiffs had perfected a materialmen's lien. The suit was removed to this Court by defendant and defendant filed its answer in which it denied that it had converted any property upon which the plaintiffs had a materialmen's lien and denied that the plaintiffs had any lien as alleged by them.

·The defendant further alleged that the plaintiffs were barred by a judgment or decree rendered between the same parties in cause number 3951 in the Chancery Court of Ashley County, Arkansas, and therefore the defendants plead res judicata as a bar to the claim of plaintiffs in this suit.

**1**

Complete diversity of citizenship of the plaintiff and the defendant and the amount involved gives the Court jurisdiction. 28 U.S.C.A., Section 1332(a) (1).

**2**

The defendant contends that the cause of action of plaintiffs, as alleged herein, is barred by the decree and judgment rendered by the Chancery Court of Ashley County, Arkansas, on November 22, 1950, in cause number 3951.

The plaintiffs concede that the rule in Arkansas is that a decree or judgment rendered in previous litigation between the parties is not only res judicata as to the issues actually decided but, also, is res judicata of all "matters which might have been litigated."

In Angel v. Bullington, 330 U.S. 183, 186, 67 S.Ct. 657, 659, 91 L.Ed. 832, the Court said:

"We start with the fact that the prevailing rule as to res judicata is settled law in North Carolina. An adjudication bars further litigation between the same parties not only as to all issues actually raised and decided but also as to those which could have been raised. * * *

The judgment of the Supreme Court of North Carolina would clearly bar this suit had it been brought anew in a state court. For purposes of diversity jurisdiction a federal court is 'in effect, only another court of the State'. Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079; see, Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 253, 25 S.Ct. 251, 256, 49 L.Ed. 462; Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853."

On page 190 of 330 U.S., on page 661 of 67 S.Ct. the Court said:

"It is suggested that the North Carolina Supreme Court did not adjudicate the 'merits' of the controversy. It is a misconception of res judicata to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation. An adjudication declining to reach such ultimate substantive issues may bar a second attempt to reach them in another court of the State."

Jurisdiction of the Court being based upon diversity of citizenship and the amount involved, the applicable law is that of Arkansas. Angel v. Bullington, supra, 330 U.S. at pages 191, 192, 67 S.Ct. 657, 91 L.Ed. 832.

In Williamson v. Columbia Gas and Electric Corp., 3 Cir., 186 F.2d 464, 469, the Court said:

"The purpose of the principle of res judicata is to end litigation. The theory is that parties should not have to litigate issues which they have al-

ready litigated or had a reasonable opportunity to litigate."

On page 470 of 186 F.2d the Court said:

"The instant case presents an excellent example of one of the things these rules were designed to avoid. As pointed out above, the acts complained of and the demand for recovery are the same. The only thing that is different is the theory of recovery. The same witnesses and documents will be necessary in the trial in both cases. No material fact is alleged in action No. 1 that was not alleged in action No. 2, save the allegations of conspiracy. Everything that plaintiff was entitled to ask for from defendant was included in action No. 2."

In Gosnell Special School District No. 6 v. Baggett, 172 Ark. 681, 684, 290 S.W. 577, 578, the Court quoted from the case of Taylor v. King, 135 Ark. 43, 204 S.W. 614, 615, as follows:

"The rule has been often announced in this court that the judgment or decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which are interposed or which could have been interposed in the former suit."

Again on page 685 of 172 Ark., on page 578, of 290 S.W., the Court in quoting from 15 R.C.L., page 964, said:

"If it is doubtful whether a second suit is for the same cause of action as the first, it has been said to be a proper test to consider whether the same evidence would sustain both. If the same evidence would sustain both, the two actions are considered the same, and the judgment in the former is a bar to the subsequent action, although the two actions are different in form."

In plaintiffs' brief they refer to the case of Eiermann v. Beck, Ark., 252 S.W.2d 388, 389, as follows:

"Our cases do not draw a distinct line beyond which res judicata invariably applies and within which it does not. The very nature of litigation makes that impossible."

Immediately following the above statement the Court in the same case said:

"The rule, however, seems to be that if the forum selected by the plaintiff has jurisdiction of the person and the subject-matter, and the parties in each instance are the same, and if claims that were made or could have been made grew out of the same transaction, then it is the duty of the aggrieved party or parties to include in one action all rights subject to judicial determination at the time suit was brought, thus preventing multiple litigation. It is inconceivable that the Eiermanns did not know, shortly after June 12th, what they were going to claim by way of losses. The figures were available from the books they claim to have kept. But slight effort would have been required to amend the complaint, to the end that all incidents directly connected with the fraud alleged or necessarily pertaining to the claimed deceit, could have been disposed of."

At the bottom of page two of plaintiffs' brief the following statement appears:

"The original suit in chancery court was, of course, based on the theory of the direct liability of Superior on either the terms of the lien statute or the theory of joint enterprise."

In the case of Ripley v. Kelly, 209 Ark. 389, 190 S.W.2d 526, the Court, beginning at the bottom of page 391 of 209 Ark., on page 527, of 190 S.W.2d said:

"The trial court correctly sustained the plea of res judicata. The general rule is stated in 30 Am.Jur., Sec. 178, pages 920–923 as follows: 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may

take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief.' Among the numerous cases cited in support of this principle are, Equitable Life Assurance Assoc. v. Bagley, 192 Ark. 749, 94 S.W.2d 722; and Phillips v. Colvin, 114 Ark. 14, 169 S.W. 316 [L.R.A.1915E, 875]."

The Court in the same case also quoted from National Surety Co. v. Coates, 83 Ark. 545, 104 S.W. 219, in which the Court said:

"A right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground for recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

The judgment and decree of the Chancery Court of Ashley County remains today unmodified and unchanged. It was affirmed by the Supreme Court of Arkansas, Brooks v. McSpadden, 219 Ark. 718, 244 S.W.2d 144.

The Chancery Court had jurisdiction of the first suit in which it rendered its decree and judgment on November 22, 1950. Kizer Lumber Co. v. Mosely, 56 Ark. 544, 20 S.W. 409; Sims v. Hammons, 152 Ark. 616, 239 S.W. 19; Southern Surety Co. v. Pfeifer Stone Co., 175 Ark. 708, 1 S.W.2d 43.

The facts and record have been set forth fully in the findings of fact and will not be repeated here. A brief summary will suffice.

The complaint of plaintiffs was filed in the Chancery Court of Ashley County, Arkansas, on December 28, 1949, in cause number 3951, against Claud R. McSpadden, Ed Watt, Charles Eberle and the defendant herein, The Superior Oil Company.

After identifying the plaintiffs and all of the defendants as to citizenship, residence and occupation, the plaintiffs alleged that in September, 1948, the defendant, Superior Oil Company, drilled a producing oil well known as Bradley Number One on its leasehold estate in Ashley County, Arkansas; that subsequent thereto it entered into an agreement with Claud R. McSpadden whereby McSpadden was to take over the operation of said well and to produce and market the oil therefrom and to drill other wells upon the leasehold estate then owned by the defendant, Superior Oil Company, and the said McSpadden was to operate and produce any subsequent well so drilled.

That the said McSpadden entered into a joint enterprise or partnership agreement with the defendants, Ed Watt and Charles Eberle, whereby they should jointly undertake the drilling of the additional wells and share in the profits therefrom.

That pursuant to such agreement the defendants obtained from the plaintiffs certain materials and supplies to use and which were used to improve the then producing oil well, Bradley Number One, and also to drill other wells on the same leasehold; that the defendants had failed and refused to pay the balance due the plaintiffs for the materials and supplies furnished them and jointly and severally owed the plaintiff the sum of $2,576.32 with interest thereon.

That the "plaintiffs are likewise entitled to and hereby claim a materialmen's lien on the above described property to secure the payment of this balance in accordance with the provisions of law pertaining thereto"; that the defendants have certain drilling equipment at the site of the operations which they are presently attempting to remove from this state and which may not leave a sufficient amount of property in this state from which plaintiffs may be

able to make the balance due them. The prayer of the complaint was that plaintiffs have judgment against all of the defendants, jointly and severally, for the sum of $2,576.32; that the court "recognize, declare and enforce its lien against the well, rig and all equipment of every nature whatsoever" pertaining to the well and operation to secure payment of the above judgment in accordance with the laws relating thereto.

The plaintiffs further prayed that, "the defendants and each of them, in the meantime, be required to make full disclosures as to their respective interests in the property and agreements herein referred to, since that information is peculiarly within the knowledge of the various defendants." The concluding paragraph of the prayer was for "all other proper legal and equitable relief to which they might be entitled."

In due time the defendant, the Superior Oil Company, filed its answer in which it first denied each and every material allegation in the complaint but admitted the making of an agreement with Claud R. McSpadden. It alleged that the said McSpadden had not performed his obligations under the "letter agreement" as amended, and denied that McSpadden had any rights whatsoever in the leasehold estate and alleged that it was the sole and exclusive owner of the leasehold estate; that whatever rights the said Claud R. McSpadden might have obtained in the leasehold estate were wholly conditional and contingent upon the full and complete performance by the said McSpadden of the terms and conditions of the "letter agreement" as amended.

That the said McSpadden was neither an agent, employee, partner or representative of it nor was he a co-tenant or joint adventurer with the defendant.

That no materials or supplies, if any, furnished by plaintiffs as alleged in their complaint, were furnished under any contract or agreement with it or with any person authorized to contract in its behalf.

That prior to June 7, 1949, the date of the "letter agreement" with the said Claud R. McSpadden, the defendant had stored upon its leasehold estate approximately 6,200 feet of oil well casing and other miscellaneous equipment of which it was the sole and exclusive owner; that said casing and other equipment have never been attached to, connected with, or used in connection with any operation on the leasehold estate and that the sole ownership of the defendant in said casing and miscellaneous equipment and storage thereof on said leasehold estate is so stated by letter of June 7, 1949, from the said Claud R. McSpadden to this defendant. That the said casing and other miscellaneous equipment of the defendant are in no wise or manner liable nor is this defendant liable to or for plaintiffs' claim or any lien of plaintiff by attachment or otherwise as alleged in plaintiffs' complaint.

The prayer of the answer was that the "complaint herein as against it be dismissed and all asserted liens and writs be held null and void and of no effect whatsoever as against the herein above mentioned and described leasehold estate, the wells thereon and the oil well casing and other miscellaneous equipment more fully described in paragraph 6 hereof, and that this defendant do have and recover of plaintiffs its costs in this action expended."

Upon the issues thus made by the complaint of plaintiffs, the answer of defendant, the ore tenus and documentary evidence introduced, the cause number 3951 was tried on the merits to the Chancery Court on November 22, 1950, and at the conclusion of the trial the Court entered its decree and judgment hereinbefore fully set forth, in which it, "ordered, adjudged and decreed that * * * the cause of action of the plaintiffs as against The Superior Oil Company be dismissed at the cost of the plaintiffs."

The court before entering the decree heard oral argument and was "well and fully advised as to the law and facts involved." The effect of the decree was a final adjudication between plaintiffs and the defendant that, (a) the defendant was not personally liable to plaintiffs for supplies furnished by them to McSpadden and used upon the leasehold estate; (b) no part of the leasehold estate or equipment thereon owned by the defendant and al-

leged in the complaint to be subject to the lien of plaintiffs was subject to any kind of lien for the payment of the supplies furnished by plaintiffs to McSpadden; and (c) that as between the plaintiffs and the defendant, Superior Oil Company, the property involved belonged wholly to the defendant and was not subject to any lien that plaintiffs might establish against any party to the suit by virtue of their alleged claim for supplies and materials furnished to McSpadden.

In the instant suit plaintiffs have alleged that the defendant was the owner of the leasehold estate and 16,000 feet of new four inch, threaded and coupled, continuous weld, grade A pipe, weighing 11 pounds per foot, and 16,000 feet of second hand three inch grade B, seamless, threaded and coupled line pipe weighing 7.70 pounds per foot; that such pipe was either actually physically on the leasehold estate or was in Ashley County for the purpose of being placed and used on the leasehold estate.

"The defendant, Superior Oil Company, has in the manner specifically set out in this complaint converted the interest in the leasehold and pipe, both in the general legal sense and also in specific violation of Act 614 of the Acts of 1923, and especially Section 5 thereof Section 51–705, Arkansas Statutes 1947, Annotated.

The defendant, Superior Oil Company, has thus converted all of the property on which these plaintiffs had a lien to secure their judgment and thus have effectively blocked any possibility of these plaintiffs collecting their judgment out of their lien."

The prayer of the complaint is for judgment against the defendant in the identical amount of the plaintiffs' judgment or decree which it obtained against McSpadden in the Chancery Court of Ashley County, Arkansas, on December 18, 1950.

Thus the plaintiffs in the instant suit are seeking a judgment against the defendant for the alleged conversion by defendant of the interest, if any, of McSpadden in the leasehold estate and in certain pipe. At the time the case in the Chancery Court between plaintiffs and the defendant was tried, November 22, 1950, every fact

that now exists, then existed. McSpadden had abandoned the operation and departed from the state. All contracts or agreements between McSpadden and the defendant had been cancelled and the right of McSpadden to acquire an interest in the leasehold estate under the agreement had been forfeited. These facts were known to the plaintiffs and no doubt were before the Chancery Court when it rendered its decree after, "being well and fully advised as to the law and facts involved."

The bond executed by the defendant when the writ of attachment was issued out of the Chancery Court, but never served, was also before the court at the time the decree was rendered and the dismissal of plaintiffs' complaint carried with it a discharge from any liability, if any had accrued, on the bond.

The plaintiffs having litigated their alleged right to a lien on the property and their right to a personal judgment against defendant cannot relitigate the questions and hold the defendant liable on different grounds or different theories. In fact, for all practical purposes the issues tried and determined in the Chancery Court are identical with the issues presented in the instant case. But if not identical, the issues in the instant case "could have been raised" in the Chancery case.

Therefore, the judgment and decree of the Chancery Court is res judicata and a bar to the claim of plaintiffs herein asserted.

3

The mandate of the United States Court of Appeals issued July 15, 1952, on the opinion in Brooks v. Superior Oil Co., 8 Cir., 198 F.2d 89, ordered that the case be "remanded to the said district court for a new trial in accord with the Materialmen's Lien Law of Arkansas."

The plaintiffs argue that the judgment or decree which they obtained on December 18, 1950, in the Chancery Court against McSpadden for $2,576.32, the balance due them for materials and supplies furnished the said McSpadden, and adjudging "that said plaintiffs are entitled to a lien under

the terms of Section 51–701, Arkansas Statutes 1947, Annotated, as against the interest or equity, if any, of Claud R. McSpadden in the oil, gas and mineral leasehold estate, if any", is conclusive of their right to a personal judgment against the defendant for the alleged conversion of the oil and gas leasehold estate. But it must be borne in mind that at the time that decree was obtained, that the defendant was no longer a party to the litigation. The plaintiffs on their brief state that before the case against McSpadden was tried that "Superior asked for, and received a dismissal and Superior was discharged from the case."

In Smith v. Woolfolk, 115 U.S. 143, 147, 5 S.Ct. 1177, 1179, 29 L.Ed. 357, the Court said:

"We are of opinion that the decree of the Chicot circuit court, made on the twenty-eighth day of October, 1878, was, so far as it concerned Joseph S. Woolfolk and Lucy D., his wife, a final decree in the cause, and they were bound to take no notice of the subsequent proceedings, unless they were served with process or entered their voluntary appearance."

The complaint of plaintiffs had been dismissed and costs awarded to the defendant. The decree subsequently rendered against McSpadden is not binding in any manner whatsoever upon the defendant and the mere fact that plaintiffs may have obtained a decree against McSpadden does not in any wise fix any liability upon the defendant for conversion of any property upon which the court decreed a lien upon McSpadden's interest, "if any".

The decree and judgment against McSpadden was based upon the provisions of Section 51–701, Arkansas Statutes 1947, Annotated. That section of the statute is Section 1 of Act 615 of the Acts of 1923. Section 51–713, supra, provides that such a lien as claimed by plaintiff, "shall be construed, established, preserved and enforced in like manner and in the same time as liens of mechanic's are now construed, established, preserved or enforced". The statutes governing the establishment and

enforcement of Mechanics' and Materialmen's liens appears in Sections 51–601 to 51–631, inclusive, Arkansas Statutes 1947, Annotated. Section 51–618 provides that in all suits under that Act, "the parties to the contract and all other persons interested in the controversy, and in the property charged with the lien, may be made parties, but such as are not made parties shall not be bound by any such proceedings."

The Supreme Court of Arkansas in Middleton v. Watkins Hardware Co., 196 Ark. 133, 140, 116 S.W.2d 1043, the opinion held that a person not a party to such suit is not bound by the judgment and decree.

Therefore, the fact that plaintiffs obtained a judgment or decree against McSpadden in the Chancery Court at a time when the defendant was not a party is of no force and effect insofar as the defendant is concerned.

As heretofore pointed out the procedure for establishing, preserving and enforcing a lien under Section 51–701, supra, is provided by Sections 51–601 to 51–630, inclusive, Arkansas Statutes 1947, Annotated. In the trial the plaintiffs introduced no testimony showing or tending to show a compliance by them with the provisions of these statutes. They did not introduce any testimony to show that the account of plaintiffs had been filed or the lien established as required by Sections 51–608 and 51–613. No account, verified or otherwise, was introduced in evidence showing any amount due or owing to the plaintiffs by anyone.

In Hirsch v. Farris, 174 Ark. 1040, 1043, 298 S.W. 487, 488, the Court in considering the establishment and enforcement of a lien under Act 615 of the General Acts of 1915, the Act relied upon by plaintiffs, said:

"The Mechanics' Lien Law [section 6922, C. & M. Digest, now Section 51–613, Arkansas Statutes 1947, Annotated] is linked by section 8 [Act 615 of the Acts of 1933, and now Section 51–708, Arkansas Statutes 1947, Annotated] to the act under review as the method prescribed for the establishment and enforcement of the liens ex--

672

cept as in Act No. 615 otherwise expressly provided. The Mechanics' Lien Law makes it the duty of every person who wishes to avail himself of the act to file with the clerk of the circuit court of the county where the property is situated upon which he wishes to have a lien fixed, a just and true account of the demand due or owing to him after allowing all credits and containing a description of the property to be charged with the lien verified by affidavit. In order to preserve a lien, this account must be filed within 90 days after the last item of the materials furnished or work or labor performed."

Beginning at the bottom of page 1044 of 174 Ark., on page 488, of 298 S.W. the Court said:

"These liens are creatures of statutes and they must be perfected and enforced according to the statutes under which they are created."

The Court further held that since the parties asserting the lien had not complied with the terms of the statute they were not entitled to a personal judgment nor to a lien.

Included in plaintiffs' complaint is a claim for the conversion of 32,000 feet of oil pipe line. The uncontradicted proof is that the pipe was conditionally sold by defendant to McSpadden but was never delivered to him. It was sent to Crossett, Arkansas, a distance of nine miles from the leasehold, and upon McSpadden's failure to pay the purchase price or any part thereof, the defendant caused the pipe to be sent back to place of origin, as it had the right to do under the law of Arkansas. Provance v. Arnold Barber & Beauty Supply Co., 218 Ark. 274, 235 S.W.2d 970. The title never vested in McSpadden and he at no time had possession of the pipe and the pipe was at all times in the possession of defendant.

■ Therefore, aside from and independently of the conclusion of the Court on the question of res judicata, the proof introduced by plaintiffs failed to establish that they had perfected any lien on any of the property which the defendant is charged with converting and the decree, upon which plaintiffs apparently rely, that they obtained against McSpadden on December 18, 1950, is of no force and effect as against the defendant.

4

The plaintiffs are not entitled to recover herein and their original complaint and amendment thereto should be dismissed. A judgment in accordance with the above is being entered today.