SPITZER v. BARNHILL

5-3133                                          374 S. W. 2d 811

Opinion delivered January 20, 1964.
[Rehearing denied Feb. 24, 1964.]

Bruce Ivy, Frierson, Walker & Snellgrove, for appellant.

E. L. Holloway, for appellee.

GEORGE ROSE SMITH, J. In this case the question which has given us the greatest concern is whether a chancery court, after having taken jurisdiction of a suit to restrain a tort defendant from denuding himself of his property, must then, as a matter of giving complete relief, retain jurisdiction and hear the common-law tort action on its merits.

On April 29, 1963, a collision occurred near Corning, assertedly as a result of drunken driving on the part of the appellee Roy C. Barnhill. The appellant was seriously injured, her husband was killed, and others in the car were also injured. As a result of the accident civil actions for damages totaling $217,000 were later filed against Barnhill. He was also charged with manslaughter and other criminal offenses.

At the time of the collision either Barnhill alone or he and his wife owned a combined restaurant and service

station north of Corning. Within a few days Barnhill, while still in the hospital, sent for Clifford Cole, a gasoline and oil dealer, and began negotiating a sale of the property. On May 10, eleven days after the collision, the Barnhills and the Coles entered into a contract by which the Coles bought the property for $30,000.

When the appellant learned that Barnhill was apparently disposing of his assets she filed the present suit to enjoin him from transferring his property except in the normal course of business. At the inception of the case the chancellor issued a temporary restraining order in accordance with the prayer of the complaint. Later on the appellant ammended her complaint to assert also her cause of action in tort for her husband's death and for her own injuries.

A preliminary hearing was held on the question whether the restraining order should be continued in force. The chancellor decided that the order ought to be dissolved, though he permitted it to remain in effect pending this appeal under Ark. Stat. Ann. § 27-2102 (Repl. 1962).

The first issue is whether the chancellor was right in holding that the proof failed to show that Barnhill was insolvent and had made conveyances in fraud of his creditors. We think the chancellor abused his discretion in directing that the restraining order be dissolved.

It appears that of the original $30,000 purchase price Barnhill at first received $18,000 in cash and a note and mortgage for $10,500. The other $1,500, which was to be payment for the personal property and fixtures, was put in escrow in a bank pending compliance with the Bulk Sales Law. On May 25, the same day that Barnhill was served with a summons in the present case, he converted the $10,500 note into cash by means of a $2,000 discount agreement with the Coles.

Barnhill at once denuded himself of all the proceeds of sale. He paid a number of outstanding debts. He used $2,400 in prepaying for several years the premiums upon

a life insurance policy in which his wife was named as beneficiary. He paid off a $6,000 mortgage to his father. He made prepayments totaling $860 upon the mortgage on his house. He spent more than $1,500 upon hospital and medical bills owed by his mother-in-law. When, after all his disbursements, he still had some $12,000 in cash, he gave it to his wife. He admits that since then he has obtained money from her when he needs it. In our opinion the decided weight of the proof shows that, at the time of the hearing upon the matter of continuing the restraining order in force, Barnhill's financial condition had already deteriorated beyond the point of insolvency. The chancellor's decision to dissolve the restraining order was an abuse of discretion that must be set aside.

The remaining issue is the serious one in the case. Upon terminating the preliminary restraining order the chancellor directed that the cause be transferred to the circuit court for trial of the tort action. The appellant, citing *Horstmann* v. *LaFargue,* 140 Ark. 558, 215 S. W. 729, maintains that we should now require the chancellor to retain jurisdiction of the tort claim and hear the case upon its merits in equity.

The opinion in the *Horstmann* case undeniably supports the appellant's position. There the plaintiff brought suit in the chancery court to set aside fraudulent conveyances and to recover damages for personal injuries. The defendants challenged the jurisdiction of equity. In upholding the chancellor's action in hearing and determining the tort claim we relied upon this statute: "In suits to set aside fraudulent conveyances and to obtain equitable garnishments, it shall not be necessary for the plaintiff to obtain judgment at law in order to prove insolvency, but in such cases insolvency may be proved by any competent testimony, so that only one suit shall be necessary in order to obtain the proper relief." Ark. Stat. Ann. § 68-1308 (Repl. 1957). We reasoned that under this statute it was the duty of the chancellor to hear the tort action in order to afford complete relief in one proceeding.

Upon reconsidering the matter we are convinced that our conclusion in the *Horstmann* case was wrong. Before the adoption of the statute in question it was necessary for a plaintiff to obtain a judgment at law before he could bring suit in equity to avoid a fraudulent conveyance. We think it clear that the statute was concerned only with the avoidance of fraudulent conveyances and was intended only to permit the plaintiff to obtain that relief (described in the act as "the proper relief") in a single suit. If the legislature had intended to bring about such a drastic change in our law as that of permitting personal injury actions to be tried in equity as a matter of right, we think that intention would have been stated in language too plain to be misunderstood. It certainly was not so stated.

This question was considered in *Jones* v. *Jones*, 79 Miss. 261, 30 So. 651. There the plaintiff attempted to maintain in equity a suit for personal injuries, relying upon statutes that permitted a creditor to attack a fraudulent conveyance without having first obtained a judgment at law. In summarily rejecting this novel contention the court said: "It was never the contemplation of the statutes invoked by appellant to authorize chancery courts to take cognizance of a suit for unliquidated damages arising out of a tort before there has been any judgment at law ascertaining the damages, the defendant being within the jurisdiction of the court." See also *Dowling* v. *Garner*, 195 Ala. 493, 70 So. 150. It is our conclusion that upon this point the holding in the *Horstmann* case must be disapproved.

The decree is reversed and the cause remanded with directions that the restraining order be reinstated and that the tort action be transferred to law.

McFADDIN, J., dissents.

Ed. F. McFaddin, Associate Justice, (dissenting in part). The Majority of this Court is holding that the Chancery Court abused its discretion in dissolving the temporary restraining order. I agree with that portion of the Opinion. But the Majority is holding that the Chancery Court should transfer the tort action to the law court. Here is the directive in the Majority Opinion: "The decree is reversed and the cause remanded with directions that the restraining order be reinstated and that the tort action be transferred to law."

*I dissent from so much of the Majority Opinion in this case as directs that the tort action be transferred to law.* I think that when equity takes jurisdiction for one purpose it should grant full and complete relief, rather than have a restraining order pending in the equity court, to hang there until a damage suit is disposed of in the circuit court and judgment obtained, and then the Judgment brought back to the chancery court to see what can be done about alleged fraudulent conveyances. I have always understood that when equity takes jurisdiction for one purpose, it takes jurisdiction for all purposes. The Majority Opinion in the present case admits that our own case of *Horstmann* v. *LaFargue,* 140 Ark. 558, 215 S. W. 729, holds in accordance with the views that I am now expressing; and the present Majority is now overruling a portion of *Horstmann* v. *LaFargue.*

I dissent from so much of the Majority Opinion as overrules any part of *Horstmann* v. *LaFargue.* It is a landmark case, having been decided by this Court on November 17, 1919, and cited and followed in a number of cases since that date. Back in 1919 when *Horstmann* v. *LaFargue* was decided, this Court consisted of Chief Justice Edgar A. McCulloch, and Associates Justices Carroll D. Wood, Jesse C. Hart, Frank G. Smith, and Thomas H. Humphreys; and *Horstmann* v. *LaFargue* was a unanimous decision of that Court. LaFargue filed suit in the Chancery Court against Henry Horstmann, Sr., Henry Horstmann, Jr., and the wife of the latter, to recover damages from Henry Horstmann, Jr. for

personal injuries, and to uncover real estate mortgaged by Henry Horstmann, Jr. in fraud of his creditors. Jurisdiction of the Chancery Court in such a case was questioned by Horstmann, Jr., both on the theory that a claim for damages was not within the jurisdiction of chancery, and on the further claim that a tort-claim-plaintiff was not a creditor. This Court, in a unanimous Opinion delivered by Justice Frank G. Smith, held that under the statute (which is now Ark. Stat. Ann. § 68-1308 [Repl. 1957])[1] a person holding a tort claim against a defendant was a creditor of such defendant and could sue the defendant in equity to reduce the tort claim to judgment and to uncover hidden assets of such defendant, if it be shown that the defendant was insolvent and that the remedy at law was inadequate and incomplete. The Court further held that the plaintiff's allegation, that the defendant was insolvent, was admitted unless the defendant denied such allegation. The Opinion reviewed many of our cases and gave the history and effect of the statute that is now Ark. Stat. Ann. § 68-1308 (Repl. 1957). It is a scholarly opinion.

The case of *Horstmann* v. *LaFargue* is a definite holding that a plaintiff may file a personal injury suit for damages in the Chancery Court provided (a) the plaintiff alleges that the defendant is insolvent; (b) that the defendant has secreted his property with intent to hinder, delay, and defraud the plaintiff; and (c) that the plaintiff's remedy at law is inadequate and incomplete. *Horstmann* v. *LaFargue* has been cited a number of times on the jurisdiction of equity to render a judgment for damages where equitable relief is sought on other grounds. Some of such cases are: *Sims* v. *Hammons,* 152 Ark. 616, 239 S. W. 19; *Protho* v. *Williams,* 147 Ark. 535, 229 S. W. 38; *Everist* v. *Wood, Judge,* 204 Ark. 124, 161 S. W. 2d 18; and *Eirmann* v. *Beck,* 221 Ark. 138, 252 S. W. 2d 388.

---

[1] The said statute reads: "In suits to set aside fraudulent conveyances, and to obtain equitable garnishments, it shall not be necessary for the plaintiff to obtain judgment at law in order to prove insolvency, but in such cases insolvency may be proved by any competent testimony, so that only one suit shall be necessary in order to obtain the proper relief."

In 73 A. L. R. 2d p. 749, there is an annotation entitled: "Right of tort claimant, prior to judgment, to attack conveyance or transfer as fraudulent"; and the holdings from nearly a score of jurisdictions (including Arkansas) are cited to sustain this text: "In most of the courts where the question has been raised it has been held that a tort claimant whose injury occurred prior to a conveyance by the person causing the injury may maintain an action to set aside such conveyance as fraudulent even though he has not obtained a judgment on his claim." The rule is further stated in this language: "In some cases a tort claimant, having reason to believe that the tort feasor is about to convey or has conveyed property for the purpose of hindering or delaying payment of the claim, has in the same action been permitted to sue for damages for the tort and to restrain or set aside the conveyance."

The case of *Horstmann* v. *LaFargue* is also a direct holding: (a) that a tort claimant is a creditor; (b) that the defendant's failure to deny insolvency is an admission of such status; (c) that equity has jurisdiction to reduce the tort claim to judgment and to impound assets of an insolvent debtor about to be secreted from the creditors where the remedy at law is inadequate and incomplete; and (d) that equity, having taken jurisdiction for one purpose, will retain it for all purposes.

I have already listed some of the cases in which *Horstmann* v. *LaFargue* has been cited and followed, but I desire to particularly call attention to what this Court said in *Cleveland* v. *Biggers,* 163 Ark. 377, 260 S. W. 432, which was decided on March 17, 1924 (over six years after *Horstmann* v. *LaFargue*), and after the Bench and Bar of Arkansas had considered the case of *Horstmann* v. *LaFargue.* Here is what the Court said in *Cleveland* v. *Biggers*:

"The action of the court in sustaining the demurrer and dismissing the complaint is defended upon the ground that, as a suit for damages, relief could be granted only in a suit at law. The case of *Horstmann* v. *LaFargue,* 140 Ark. 558, is against that view. In that

case a suit for personal injuries was brought in equity, and in the same suit it was asked that certain alleged fraudulent conveyances be uncovered. The jurisdiction of the court was challenged upon the ground that a suit for unliquidated damages could be maintained only at law; but we held that, inasmuch as it was necessary for the plaintiff to go into equity to uncover the fraudulent conveyances, all the matters in issue should be adjudged and complete relief afforded. This subject was there thoroughly considered, and need not be again reviewed.

"So here the plaintiffs asked the relief of uncovering certain alleged fraudulent conveyances, which could be obtained only in a court of equity, and the court would therefore have had jurisdiction to afford complete relief, by way of granting damages, if plaintiffs had elected to pursue that remedy."

In the present Opinion the Majority says: "If the legislature had intended to bring about such a drastic change in our law as that of permitting personal injury actions to be tried in equity as a matter of right, we think that intention would have been stated in language too plain to be misunderstood. It certainly was not so stated." I make the point that in 1919 this Court held that a personal injury action could be tried in equity under the conditions stated in *Horstmann* v. *LaFargue;* and that since 1919 there have been innumerable sessions of the Arkansas Legislature; and if anyone had thought that *Horstmann* v. *LaFargue* was incorrect, the statute relied on by this Court in *Horstmann* v. *LaFargue* could have been amended by the Legislature. All through the years, from 1919 to the present time, *Horstmann* v. *LaFargue* has been the law of Arkansas, and is so stated in the annotation previously herein cited; and the Legislature has never changed the statute on which *Horstmann* v. *LaFargue* was based. Now, after a lapse of more than forty years, this Court is overruling a portion of *Horstmann* v. *LaFargue.* I stand by the Opinion of this Court in 1919, and I would leave *Horstmann* v. *LaFargue* unchanged. Therefore, I dissent.