EIERMANN *v*. BECK.

4-9878                                    252 S. W. 2d 388

Opinion delivered November 3, 1952.

*Milton McLees,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from a judgment dismissing the complaint upon a finding that the cause was *res judicata.*

In April, 1949, Eiermann and his daughter, Bertha, purchased from Margaret Beck and J. G. Elsken the Bee Restaurant. It was operated in a building owned by J. M. Beck and his wife, Margaret. The amount paid in cash with acceptance of an offer to sell for $7,500 was $750. The remainder was paid at a later date and is not an issue here. Concurrently the Eiermanns leased that part of the realty occupied for restaurant purposes for a period of three years with an option for six additional years, agreeing to pay the Becks $110 per month.

The purchasers took possession May 1, 1949, and operated until June 12th. However, on June 1st the Eiermanns sued in equity under allegations that income from the business had been so grossly misrepresented as to amount to fraud. Other allegations were: (a) Because of the misrepresentations made by the defendants, "plaintiffs have suffered heavy loss every day since they took

possession of the premises; . . . (b) the defendants removed their deposit with the utility companies in the total sum of $200, although it was contemplated by the parties that these sums would be left on deposit and inure to the benefit of the plaintiffs; . . . (c) Margaret E. Beck removed knives, forks, spoons, chinaware, and kitchen utensils, all of which were covered by the bill of sale, and (d) she removed and refused to replace the stock of goods covered by the sale of the aggregate value of $96.29.''

The demand was for judgment for $7,500 representing purchase price of the building, for $330 covering rent, and for $211.10 covering "the amount paid by plaintiffs to replace the equipment removed by the defendants," and for $96.29 representing the value of goods removed by Margaret E. Beck—a total of $8,137.39.

Complaint in the suit at bar was filed in October, 1950. It is alleged that the Becks and Elsken (the latter having acted as agent) represented that the restaurant produced an average income of $3,000 per month with an overhead expense of $700. This expense, said the complaint, was grossly understated, and the income was palpably exaggerated, with full knowledge that each statement was false. Actual income during May was alleged to have been $1,577.77 against which overhead expenses were $983.44, "resulting in a gross profit of $594.33. If representations made by the defendants had been true the plaintiffs would have realized a gross profit of $1,705.67. During the twelve operational days of June the income was $495.67, offset by a cost of $497.31, leaving a gross deficit . . .'' The gross profit they should have realized was set out as $920.04. The prayer was for damages of $2,626.35.

A photostatic copy of the decree rendered in consequence of the chancery complaint of June 1, 1949, recites that the cause was submitted upon the pleadings, testimony of witnesses taken *ore tenus* at the bar of the court, "and other matters and proof before the court." The lease was cancelled, the contract of purchase was set

aside, and judgment was rendered against Margaret Beck and J. G. Elsken for $7,500 with interest from April 14, 1949. This judgment was paid.

Circuit court, in dismissing the instant case, necessarily found that the parties to each action were the same. This is not disputed. It must also have found that the damages now alleged were known to the plaintiffs when the bill was filed, or that failure to amend and include all elements of loss before trial August 25, 1949, was with knowledge that the damages now alleged had occurred, hence they elected to litigate the controversy as set out in the chancery action. It will be noted that demands other than for cancellation of the bill of sale and lease were included in the complaint.

In a quotation from Chitty, Judge HART, speaking for the court, approved the rule that where there is a false warranty containing elements of fraud and deceit, the party has his election to affirm the contract and sue upon the breach of warranty, or repudiate it, offer a return of all received, then rescind and sue for damages. *Warden v. Middleton*, 110 Ark. 215, 161 S. W. 151. This rule is too well established to require emphasis.

Appellants' contention is that when the suit was brought June 1st without surrender of the property, damages accruing from that time until June 12th were not ascertainable and the action was essentially for cancellation. The demand, however, was for $8,137.39, so certain elements of damage were included, although the sums now claimed were not mentioned.

We are cited to Judge BATTLE's opinion in *Roth v. Merchants' & Planters' Bank*, 70 Ark. 200, 66 S. W. 918. It was held that a judgment avoiding a negotiable note given for a patent (void because not executed in conformity to the statute requiring that it be on a printed form showing the consideration) did not bar a subsequent suit against the maker for the balance due on the price of the patent. Judge BATTLE, in the same opinion, quoted from *Shaver v. Sharp County*, 62 Ark. 76, 34 S. W. 261: "That which has not been tried cannot have been adjudicated.

. . . That which is not within the scope of the issue presented cannot be concluded by the judgment."

Our cases do not draw a distinct line beyond which *res judicata* invariably applies and within which it does not. The very nature of litigation makes that impossible. The rule, however, seems to be that if the forum selected by the plaintiff has jurisdiction of the person and the subject-matter, and the parties in each instance are the same, and if claims that were made or could have been made grew out of the same transaction, then it is the duty of the aggrieved party or parties to include in one action all rights subject to judicial determination at the time suit was brought, thus preventing multiple litigation. It is inconceivable that the Eiermanns did not know, shortly after June 12th, what they were going to claim by way of losses. The figures were available from the books they claim to have kept. But slight effort would have been required to amend the complaint, to the end that all incidents directly connected with the fraud alleged or necessarily pertaining to the claimed deceit, could have been disposed of.

The right of a court of chancery to adjudge damages where upon another ground it has acquired jurisdiction is discussed in *Horstmann* v. *LaFargue,* 140 Ark. 558, 215 S. W. 729. LaFargue, sheriff of Arkansas county, sued Horstmann and others, alleging that the defendants conspired with John Peters and that the natural sequence of such conspiracy produced the personal injury complained of, for which $10,700 was asked. The case is unusual in that equity jurisdiction was acquired under allegations that the Horstmanns had fraudulently conveyed property to defeat creditors, thus rendering themselves insolvent. When LaFargue undertook to levy an execution on personal property owned by one of the Horstmanns he was shot by Peters.

In affirming Arkansas Chancery Court, Judge FRANK G. SMITH quoted with approval from Pomeroy and cases mentioned on pages 568-'69 of the opinion: "If the controversy contains any equitable features, or requires any

purely equitable relief which would belong to the exclusive jurisdiction, or involve any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to complete adjudication, and may thus establish purely legal rights, and grant legal remedies, which would otherwise be beyond the scope of its authority.'' Another quotation from the same opinion (with citations) is: ''This principle has been applied in many cases in awarding judgment for pecuniary damages, even when the party had an adequate remedy at law, if the damages were connected with a transaction over which the courts had jurisdiction for any purpose, although for the purpose of collecting damages merely they would not have had jurisdiction.''

The Uniform Sales Act is to be found in Ark. Stat's, and §§ 68-1469 and '70 are pertinent.

We think the court correctly determined that the appellants here should have litigated their demands in the equity action—a forum they selected.

Affirmed.

GEORGE ROSE SMITH, J., concurring. The judgment should be affirmed, but I think the reason is that the appellants are bound by an election of remedies. Their first suit was to disaffirm the contract, and certainly when that judgment was paid the contract went out of existence. It is now too late for them to seek the inconsistent remedy of deceit, which is an action in affirmance of the agreement. Williston, Contracts, §§ 1528, 1528A.