HART *v.* HART.

5-351                                   265 S. W. 2d 950

Opinion delivered March 22, 1954.

*Cole & Epperson,* for appellant.

*W. H. McClellan,* for appellee.

WARD, J. The question presented on this appeal is whether the evidence shows appellant to be such a resi-

dent of Arkansas as will enable him to maintain an action for divorce.

Appellant and appellee were married in 1939 and on March 18, 1953, appellant filed a suit in Hot Spring County for a divorce from appellee. Appellee, a resident of Oklahoma, appeared specially and filed a motion to dismiss appellant's complaint on the ground that he was not a *bona fide* resident of Arkansas. After hearing the testimony the chancellor sustained appellee's motion and dismissed appellant's complaint, hence this appeal.

Testimony introduced by appellee to sustain the motion is to this effect: Prior to November, 1951, appellant was employed in Louisville, Kentucky, by Motors Insurance Corporation and was earning approximately $700 a month. While so employed appellant lived in Louisville in their own home with his wife and four children, during which time his residence was in Kentucky. After resigning his job in Louisville in November, 1951, appellant obtained the same type of employment in Cincinnati, Ohio, but appellee and the children continued to live in Louisville. In May, 1952, appellant's employment in Cincinnati was terminated. Appellant, who had served in the Navy during the second World War, as a Naval Reserve Officer was due to report to Norfolk, Virginia, on June 14, 1952, for a two weeks' training period. So on June 1, 1952, appellant and his family went to the home of appellant's parents near Donaldson, Hot Spring County, Arkansas, leaving their furniture and household effects in storage at Louisville. When appellant left for training on or about June 14th appellee and the children went to Duncan, Oklahoma, to reside with her parents. Upon finishing the training period about July 1st appellant learned that he was to undergo two more weeks of training beginning on or about July 25th. When appellant left for the second training period appellee and the children went back to Duncan to reside with her parents. After this training period was over appellant again returned to Duncan and stayed a short time there then took his family to his parents in Arkansas where they stayed until about September 12, 1952, when they all returned

to Duncan, Oklahoma, and again appellant was ordered to report for active duty in Chicago on or about September 25, 1952. On the last trip to Oklahoma appellant and appellee looked for a house in which to live and finally it was arranged to rent a house from appellee's brother and appellant spent three or four days in helping repair the house. At this time appellant directed the storage company in Louisville, Kentucky, to ship his furniture and household goods to Duncan, Oklahoma, and he was advised that the shipment could not be made until about the first of October, 1952. During the 1952 Christmas holidays appellant went to Duncan, Oklahoma, and stayed a few days and then spent a few days with his parents in Arkansas before returning to duty. The first intimation that appellant was preparing to secure a divorce was when he so advised appellee's brother on February 13, 1953. On March 5, 1953, appellee filed an action in Oklahoma for maintenance and custody of the children. Appellant arrived in Duncan on March 15th and was served with summons on March 16th when he immediately returned to Arkansas and filed this divorce action on March 18th. Several letters were introduced in evidence as having some bearing on appellant's intentions regarding residence. On February 13, 1953, appellant wrote that he expected orders for overseas duty for the next 18 months or two years. On February 24, 1953, appellant wrote appellee that he had a ride to Social Hill and after a day or two would come on to Duncan, Oklahoma. On July 22, 1952, a life insurance company wrote appellant at Duncan, Oklahoma: "We have noted your new address and have changed our records accordingly." On September 26, 1952, the storage company in Louisville, Kentucky, wrote appellant a letter addressed to Duncan, Oklahoma, in regard to his furniture. On March 5, 1953, a friend of appellant wrote him a letter addressed to Duncan, Oklahoma.

On behalf of appellant testimony was introduced in substance as follows: Appellant states that he intended to make his home with his parents at Donaldson, Arkansas, and that he never established a residence in Okla-

homa. In 1952 appellant purchased Arkansas license for his car to replace Kentucky license which had expired about the first of July and this license was renewed in January, 1953. Appellee who had subscribed to numerous magazines directed the publishers in August, 1952, to change the address to Donaldson, Arkansas. Appellant said he intended to purchase a farm near Donaldson, Arkansas, and had made arrangements with his father to help him buy it, but the deal never was consummated. He states that he never lived in the home which they rented in Duncan, Oklahoma, but stayed with his wife at her parents home at 1005 Ash Street in Duncan. Appellant's mother states that appellee did not want to stay on the farm with her husband but wanted to make their home in Duncan; that when appellant was home from service he always stayed at her home.

From the above and other similar testimony we are unable to say that the finding of the chancellor in this instance is not supported by the weight of the testimony.

The rule regarding *bona fide* residence in divorce cases which obtained theretofore was changed by this court in *Cassen* v. *Cassen*, 211 Ark. 582, 201 S. W. 2d 585, where it was stated that one must, in truth and in fact be a *bona fide* resident in this state before he can maintain an action for divorce. Before the decision in the *Cassen* case, *supra*, we stated in *Mohr* v. *Mohr*, 206 Ark. 1094, 178 S. W. 2d 502, that "there must be overt acts sufficient to demonstrate a real and *bona fide* intent to acquire residence before the State of Arkansas—as a silent third party to every divorce suit here—will allow its courts to be used as a haven of the transient and dissatisfied spouse."

Appellant contends that the burden of proof was on appellee to show that he was not a *bona fide* resident of Arkansas and that the proof in this case should be viewed in that light, but we do not entirely agree with this contention. In *Gilmore* v. *Gilmore*, 204 Ark. 643, 164 S. W. 2d 446, it was stated that "*prima facie*, residence was established for the requisite period of ninety days" and

that this fact justified the chancellor in rendering the decree. But following this the court also stated that ''proof in support of appellant's motion, however, shows that appellee misconstrued the statute'' and the case was reversed. Conceding that appellant's petition for divorce filed in Arkansas raised a presumption that he was a *bona fide* resident, this presumption was overcome by proof on appellee's motion and the burden of establishing a *bona fide* residence thereupon shifted to appellant. The question before the chancellor here was: Did the evidence show appellant to be a *bona fide* resident of Arkansas? He held it did not. As held in *May* v. *May*, 221 Ark. 585, 254 S. W. 2d 957, the decree of the chancellor will be affirmed if it is supported, as we hold it is, by the weight of the evidence.

Affirmed.