## CHIOTTE *v.* CHIOTTE.

5-686                                      279 S. W. 2d 296

Opinion delivered May 23, 1955.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Jack Holt* and *John F. Park,* for appellee.

WARD, J. This appeal presents two issues: (a) *Res judicata,* and (b) sufficiency of the evidence to establish *bona fide* residence in a divorce action.

On July 26, 1954, appellee, John E. Chiotte, filed suit for divorce against appellant, Angela M. Chiotte, alleging eight years separation. On August 20, 1954, appellant appeared specially and moved the court to dismiss appellee's complaint on the ground that he was not a *bona fide* resident of Arkansas. On September 1, 1954, appellant appeared specially and filed an amendment to her original motion to dismiss, stating that appellee filed a petition for divorce on June 1, 1953, which petition he voluntarily dismissed, and that appellee filed another petition for divorce on January 29, 1954, which the court dismissed for want of jurisdiction. The chancellor deferred action on the motion and amended motion to dismiss until after he heard appellee's testimony on his divorce petition, and on September 28, 1954, he dismissed said motion and amended motion and entered a decree of divorce in favor of appellee. This appeal followed.

(a) *Res judicata.* We cannot agree with appellant that the disposition made of the first two divorce suits is *res judicata* of this action. The record shows that the second divorce suit was dismissed by the court for lack of jurisdiction on May 17, 1954, which simply means that the trial court, as of that date, was of the opinion that the testimony did not show appellee to be a *bona fide* resident of Arkansas. The first divorce action was voluntarily dismissed by appellee less than a year before this suit was instituted. As stated in 30 Am. Jur., page 918, § 174, "In the application of the doctrine of *res judicata,* if it is doubtful whether a second action is for the same cause of action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. . . . If, however, the two actions rest upon different sets of facts . . . a judgment in one is no bar to the maintenance of the other. It has been said that this method is the best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties, and it has been designated as infallible." The above stated rule, which is generally recognized, is peculiarly applicable to the case under consideration.

Bearing in mind that, as we have heretofore held, the facts constituting residence must exist at the time a divorce suit is filed, it is obvious that the facts relative to appellee's being a *bona fide* resident of Arkansas might be [and they are] entirely different on July 26, 1954, when the present action was begun from those existing on June 1, 1953, and January 29, 1954, when the former divorce suits were filed respectively. For this Court to hold otherwise would lead to an absurdity, for then, if a person once failed to establish a residence in this state, he would forever be precluded from doing so in the future. Appellant recognizes, in her brief, the validity of this principle, but insists it does not apply here because the facts [indicating residence] are identical in both instances. We cannot agree with appellant. When this suit was filed appellee had not only resided longer in Arkansas but he had indulged in additional activities indicating a *bona fide* residence.

(b) *Sufficiency of the evidence.* The testimony on behalf of appellee, uncontradicted by any testimony on behalf of appellant, is substantially as follows: Appellee and his wife lived together in Peoria, Illinois, until they separated in the early part of 1947. After that Mrs. Chiotte resided in her home and appellee moved to a hotel where he lived until March 1953 when he moved to Little Rock. During the years mentioned appellee was the principal owner and president of the Western Coal and Fuel Company, from which business he was drawing a salary of $833 per month. He drew this same salary after coming to Little Rock until January 1954. From this date until August 1954 he drew a salary of $400 per month after which time he has been drawing a salary of $200 per month. As heretofore stated he filed the first divorce suit against his wife on June 1, 1953, which he voluntarily dismissed, and filed the second suit January 29, 1954, which the court dismissed because of lack of jurisdiction. After his separation appellee kept company with Mrs. Mildred Schwiette in Peoria, and in December 1953 he and Mrs. Schwiette purchased the Retreat Café on West Seventh Street in Little Rock for $6,000, $2,000 of the

purchase price being paid at the time. The two have jointly owned and operated the café continuously since the date of purchase. Mrs. Schwiette lives in North Little Rock and appellee lives in rooms adjoining the café, and they have a joint bank account at the Union National Bank. Appellee works regularly in the café except that he takes off occasionally for fishing or recreation. Since coming to Arkansas he has gone back to Illinois only twice, the first time for three months in the latter part of 1953 and the second time for four days in August 1954, when he attended a board meeting.

Appellee states that he is afflicted with arthritis and for that reason came to Arkansas for his health, and that he intends to make this his permanent residence. Appellee testified that he has assessed his property and paid his taxes here, has bought State and City automobile licenses, and has purchased or renewed business licenses five times. Several other witnesses corroborated appellee as to the fact that he works in the café and purchases supplies for the same and that he has continuously lived in Arkansas since early 1953.

Under the above factual situation as disclosed by the record we cannot say that the chancellor's finding that appellee was a *bona fide* resident of Arkansas is not supported by the evidence. It is true, as stated in *May v. May*, 221 Ark. 585, 254 S. W. 2d 957, that appellee "must in fact and in truth be a *bona fide* resident of Arkansas and that such residence must be shown by overt acts sufficient to demonstrate a real and *bona fide* intent to acquire such a residence." However, the question of whether appellee is a *bona fide* resident of Arkansas with the intention of remaining here and making this State his home is, as stated in *Walters v. Walters*, 213 Ark. 497, 211 S. W. 2d 110, "purely a question of fact." Obviously no court can look into the mind of a person and say with confidence what his intentions are, therefore the necessity of looking to "overt acts" for corroboration or contradiction of the person's expressed intentions. In determining this difficult question of fact in similar cases this Court has frequently followed the decision of the trial

court and has always done so unless the testimony shows the trial court to have held contrary to the weight of the testimony.

The facts in the case under consideration are somewhat similar to those in the case of *Knaus* v. *Knaus,* 223 Ark. 517, 267 S. W. 2d 16. In the cited case the parties lived in Pennsylvania and had not lived together since 1945. The husband came to Little Rock in June 1952 and filed suit for divorce on August 28, 1952. Testimony in his behalf showed that he had moved his belongings to Arkansas, opened a bank account, rented an apartment, paid taxes and had done other things tending to show that he had become a permanent resident of this State. In an effort to discredit his testimony it was shown that when he came to Arkansas a divorce suit was still pending in Pennsylvania and also that he had been absent from Arkansas approximately twenty-eight days. The trial court in the cited case concluded that a *bona fide* residence had been shown and we approved that finding. In doing so we said: "As in most cases of this kind, turning upon a question of subjective intent, the issue is not free from doubt and might with some plausibility be decided either way. The chancellor concluded that the appellee is acting in good faith, and we cannot say that his conclusion is contrary to the weight of the testimony."

Appellant, in support of her contention for a reversal, cites *Walters* v. *Walters, supra, May* v. *May, supra, and Hart* v. *Hart,* 223 Ark. 376, 265 S. W. 2d 950, but we think these cases are obviously distinguishable and are in harmony with the conclusion we have reached. In the first case the opinion shows that appellant virtually admitted he claimed to be a resident of Nebraska at the time he filed his suit in this state, and in the latter two cases the evidence [tending to show residence here] was different from [and weaker than] the evidence in this record, and, also, we upheld the trial court in both instances.

Finding no error, the decree of the trial court is affirmed.