COLEMAN'S SERVICE CENTER, INC. *v.* FEDERAL DEPOSIT INSURANCE CORPORATION, Southern Inn Management, Inc., and Audubon Federal Savings & Loan Association

CA 95-819 935 S.W.2d 289

Court of Appeals of Arkansas
Division III
Opinion delivered December 18, 1996

*Daggett, Van Dover & Donovan, PLLC,* by: *Robert J. Donovan,* for appellant.

*Ann S. Duross,* Ass't Gen. Counsel; *Richard J. Osterman, Jr.,* Sr. Counsel; *E. Whitney Drake,* Special Counsel; and *Eichenbaum, Scott, Miller, Liles & Heister, P.A.,* by: *James H. Penick III,* for appellee Federal Deposit Insurance Corporation.

JOHN B. ROBBINS, Judge. This is the second appeal in this action. In *Coleman's Service Center, Inc.* v. *Southern Inns Management, Inc.,* 44 Ark. App. 45, 866 S.W.2d 427 (1993), we dismissed the first appeal. This appeal follows the Monroe County Circuit Court's entry of judgment for appellee Federal Deposit Insurance Corporation (FDIC) against appellant Coleman's Service Center, Inc., in the amount of $123,135.29 as the result of Coleman's breach of a lease. For the reasons expressed below, we affirm the circuit judge's decision.

Royce Lee, J.M. Denton, Jr., Darrell Larker, and James Mc-Gowin decided to build a motel, truck stop, and convenience-store complex near the intersection of U.S. Highway 49 and Interstate 40 in Brinkley, Arkansas. Messrs. Lee, Larker, and McGowin incorporated D'Jer, Inc., for this purpose. D'Jer and Messrs. Lee, Larker, and McGowin borrowed over $4 million from Audubon Federal Savings & Loan Association on May 4, 1984, to finance the project. The note was secured by a deed of trust executed that same date which conveyed to Audubon a lien on two parcels of realty (one contained 15 acres and the other, 1.159 acres) and D'Jer's leasehold interest dated June 24, 1971, in a contiguous one-acre tract. Also, on that date, D'Jer separately assigned to Audubon all of its interest in the one-acre lease. In October 1984, D'Jer leased the entire project to appellant. Separate leases were executed for the motel, the truck center, and the convenience store. On February 21, 1985, D'Jer assigned its interest in the convenience-store sublease to Audubon as additional security. The 1984 assignment of the 1971 lease and the February 1985 assignment of the sublease were recorded in Monroe County.

The project experienced serious financial difficulties, and no payments were made on the 1984 note. In the summer of 1985, Audubon instituted foreclosure proceedings against D'Jer in Monroe County. Later, rather than pursuing foreclosure, Audubon agreed to restructure the financing on the project and entered into a purchase and sale agreement with Messrs. Lee and Denton, Troy Coleman (appellant's principal stockholder), Dr. Glen Wegener, and Dr. Herme Plunk. That agreement, dated December 31, 1985, provided that Audubon would provide enough money to permit completion of the project and that the individuals would assume the project indebtedness. This agreement also provided that the transaction was made subject to the terms, liens, and other encumbrances created by the original deed of trust, the 1984 one-acre lease assignment, and the 1985 assignment of the convenience-store lease. Although Mr. Coleman and Dr. Plunk withdrew from the project, the others completed the plan.

D'Jer transferred all interest it had in the project to Audubon on February 19, 1986. On March 12, 1986, Audubon conveyed the real and personal property involved in the project to Messrs. Lee and Denton and Dr. Wegener. At the same time, Messrs. Lee and Denton and Dr. Wegener delivered a promissory note in the

amount of $5,500,000 to Audubon. This note represented the original principal plus accrued and unpaid interest. Messrs. Lee and Denton and Dr. Wegener, and their spouses, executed to Audubon a mortgage on the 15-acre and 1.159-acre parcels. The next day, these individuals conveyed the property to Hercoleed, Inc., an Arkansas corporation formed by Messrs. Lee and Denton and Dr. Wegener. On June 19, 1986, another promissory note in the amount of $100,000 was executed by Messrs. Lee and Denton and Dr. Wegener to Audubon in consideration for additional funds. On June 20, 1986, the Federal Home Loan Bank Board put Audubon into receivership. The debtors made no payments on the May 4, 1984, or the March 12, 1986, notes. The Federal Savings & Loan Insurance Corporation (FSLIC), Audubon's receiver, filed a foreclosure proceeding in federal district court on November 18, 1987; that case was ultimately settled. The FDIC succeeded the FSLIC as Audubon's receiver in 1989.

On June 1, 1989, Hercoleed, through Mr. Lee, and appellant, through Mr. Coleman, entered into a written amendment to the convenience-store lease, which substantially reduced appellant's obligation for rent. This was apparently done without any approval from, or notice to, Audubon or its receiver, even though all of the rents and profits under the lease had been assigned to Audubon.

In 1989, Marbella & Company of Arkansas, Inc., unsuccessfully tried to purchase the FDIC's interest in the project. However, in December 1989, Marbella did acquire all of the stock of Hercoleed and D'Jer and, in March 1990, acquired the fee simple interest in the one-acre parcel of land.

In 1990, the FDIC sued in federal district court for foreclosure of the deed of trust. On June 11, 1990, the federal court appointed Southern Inns Management, Inc. (SIMI), as receiver for the property. Appellant was included as a defendant in the federal court foreclosure action. In its third amended complaint, the FDIC included the following allegations against appellant:

> 27. As part of D'Jer's original agreement under the construction loan agreement with Audubon on the Quality Inn project, D'Jer was to assign as additional collateral any and all leases which were entered into by D'Jer on the property. On October 3, 1984 D'Jer and defendant Coleman Service Centers, Inc. entered into, *inter alia*, two (2) leases, one

covering the convenience store facility on the subject property, and another conveying the truck repair facility on the subject property. Both leases were filed of record on November 5, 1984, and subsequently assigned to Audubon on February 21, 1985, with said assignments being filed on March 28, 1985 in the real estate records of Monroe County, Arkansas. Copies of said leases, with attached Assignments, are attached hereto as Exhibits "H" and "I", and made a part hereof. A portion of the property conveyed under the lease and assignment attached as Exhibit I, is also conveyed under the June 24, 1971 lease, and therefore is actually a sublease from D'Jer to Coleman Service Center, Inc.

28. During the later part of 1985, the parties to the transaction realized the project was not going to survive under its existing structure, and the parties agreed to restructure the project, with Audubon providing additional funds. First, D'Jer agreed to convey all of its right, title and interest in and to the real property, personal property, and leasehold to Audubon, subject to the June 13, 1984 Deed of Trust and assignments of February 21, 1985 and June 13, 1984, with Audubon agreeing to reconvey the said property to a new ownership group, while maintaining its lien priority on the real property and leasehold, by not terminating or releasing the June 13, 1984 Deed of Trust, and assignment of leasehold, or the February 21, 1985 assignments. Further, the lien created by the Assignment of Leasehold pursuant to Exhibit "G," was also preserved by a subsequent complete Assignment of Lease dated February 19, 1985, and filed of record in the Monroe County real estate records on July 28, 1986, a copy of said assignment is attached hereto as Exhibit "J", and made a part hereof. The clear intention of all parties was to maintain the June 13, 1984 lien priority on the real property, personal property, and leasehold to secure the $5,500,000 and $100,000 notes of March 12, 1986 and June 19, 1986 (referred to in paragraphs 5 and 10 hereinabove).

29. The March 13, 1986 conveyance from D'Jer to Audubon, was by Warranty Deed, with the specific exception that the transfer was made "*subject to*" the Deed of Trust in favor of Audubon which had been filed in Mortgage Record Book 107, Page 278 of the records of Monroe

County, Arkansas. A copy of said deed is attached hereto as Exhibit "K", and made a party hereof.

30. In the alternative, as admitted on several occasions throughout the deposition of Troy Coleman, principal owner of Defendant, Coleman's Service Center, Inc., Plaintiff's decision to restructure the financing on the Quality Inn Project, in lieu of foreclosure, was made in reliance on representations and warranties made by Defendant's Royce Lee and Coleman's Service Center, Inc., through it's [sic] agent Troy Coleman, that the convenience store lease attached hereto as an exhibit to Exhibit "I" to the Complaint, was in full force and affect [sic], and that no modifications or amendments had been made thereto. As provided in the March 12, 1986 mortgage attached hereto as Exhibit "B", Plaintiff retained its lien on the leasehold including rents and profits, and a complete and full assignment of any and all interest of the lessor in and to the unmodified lease. As a result of said pledge of rents and profits, and the full and complete assignment of the leasehold, and the full knowledge of Defendant Coleman's Service Center, Inc. of said pledge and assignment, there is privity of contract between the Plaintiff and the Defendant Lessee, Coleman's Service Center, Inc., and, Plaintiff is a third party beneficiary of the convenience store lease which is the subject of this dispute.

31. Notwithstanding said representations and warranties of the Defendant's Coleman's Service Center, Inc. and Royce Lee, and Coleman's full knowledge of the pledge and assignment, without any notice whatsoever to Plaintiff, some time after Plaintiff's mortgage was filed on March 13, 1986, Defendants Coleman's Service Center, Inc. and Hercoleed, Inc. (successor in interest of D'Jer as Lessor), by and through their duly appointed agents and representatives, Troy Coleman and Royce Lee, unilaterally entered into an agreement attempting to modify and amend the convenience store lease. A copy of said agreement dated June 1, 1989, is attached hereto as Exhibit "L", and made a part hereof (the "Amendment to Lease"). At the time of said unilateral modification, Hercoleed, Inc. was in default under the terms of the restructured financing on the project. Said amendment is void *ab initio*, and without any force or affect [sic]

whatsoever.

32. The Amendment To Lease resulted in a substantial reduction in rent, and therefore collateral, and has no economic basis in fact, and is a mere subterfuge between business associates and personal friends, while Defendant Hercoleed, Inc., nor its individual stockholders and Defendants, Royce Lee, Jack Denton, and Glenn Wegener, ever made even one payment under the restructured financing.

33. Notwithstanding the fact that the Amendment To Lease is obviously dated after Plaintiff's Mortgage of March 12, 1986, and therefore subject to foreclosure under Plaintiff's Mortgage of March 12, 1986, the Amendment To Lease was a material deviation from the original lease; and as a result of Defendant's knowledge of the pledge and assignment, Plaintiff was entitled to notice of any amendments thereto, and therefore the Amendment To Lease is not binding on the Plaintiff and any and all interest of Defendant Coleman's Service Center, Inc. in and to the convience [sic] store lease, and any amendments thereto, is subject to Plaintiff's mortgage attached hereto as Exhibit "B", and should be foreclosed, terminated and forever barred as a claim against the subject property. As a result of Defendant Coleman's failure to properly pay in accordance with the terms of the original lease, Defendant Coleman's Service Center, Inc. is in default under the terms of the original lease, and therefore should be ejected from the premises and the subject lease and any amendments thereto should be foreclosed, terminated and barred forever as a claim against the subject property.

34. In the alternative, if the Court finds that the convenience store lease is not subject to foreclosure and termination, and that Defendant Coleman's Service Center, Inc., is not in default, but that the original lease should control, Defendant Coleman's Service Center, Inc. should be required to account to Plaintiff for any and all rentals not paid as provided under the original convenience store lease, and a judgment in favor of Plaintiff should be entered for said sum.

While the federal action was pending, FDIC and SIMI filed this action for unlawful detainer against appellant in the Monroe County Circuit Court, seeking possession of the property and

treble damages for appellant's breach of the lease. On January 30, 1991, appellant objected to the jurisdiction of the circuit court and to the issuance of a writ of possession. Appellant argued that the filing of this action in circuit court would cause a multiplicity of actions involving the same issues.

On February 8, 1991, Federal Judge Elsijane Roy entered an order granting the FDIC's motion for partial dismissal of paragraphs 33 and 34 of its third amended complaint. Judge Roy stated: "IT IS, HEREBY, ORDERED, DECREED, and ADJUDGED, after due consideration of the matters and Motion before the Court, that Plaintiff's claim as set out in paragraphs 33 and 34 of its Third Amended Complaint concerning the default and breach of the Coleman Service Center, Inc., lease is hereby dismissed without prejudice." On February 11, 1991, in response to appellant's objection, appellees filed a copy of Judge Roy's order with the circuit court and argued that, as a result of the federal court's partial dismissal, the circuit court had jurisdiction of this action.

A hearing was set for 9:00 a.m. on February 12, 1991, in circuit court. Appellant's counsel, however, was mistaken as to the time of the hearing and failed to appear. On February 13, 1991, the circuit judge held that appellees had presented *prima facie* evidence that they were entitled to judgment against appellant in the amount of $143,240.90 and entered a "judgment" directing the clerk of the court to issue appellees a writ of possession.

That same day, appellant filed a motion to set aside the judgment, arguing that its attorney had missed the hearing due to a misunderstanding. It also argued that the order of partial dismissal by the federal district court had been entered ex parte without the knowledge of appellant's counsel. Appellant also filed its answer on February 13, 1991, wherein it stated that the lease had been orally amended in 1986 to provide that, in order to stimulate business, the lessor would bear one-half the cost of certain expenses and that, in 1989, the amendment was memorialized in a written document. Appellant denied that it was in arrears and asserted that it had simply paid rent according to the amended lease.

Appellant also filed a motion for stay of the writ of possession and requested that it be allowed to post a bond pending trial. On February 20, 1991, appellant filed a bond for $150,000.00. On February 22, 1991, the circuit court entered an order finding that

the proposed bond was not filed within the five-day period required by Ark. Code Ann. § 18-60-307(e) and that it did not otherwise comply with that statute. In this order, the circuit judge directed the sheriff of Monroe County to complete appellant's eviction from the premises.

On March 22, 1991, appellant filed a counterclaim against appellees and a third-party complaint against Don Dedman.

On October 28, 1991, the federal judge issued a memorandum opinion determining the rights of the parties in the one-acre tract and the lease agreement with respect to the convenience-store portion of the project. (It was undisputed that the FDIC was entitled to a judgment of foreclosure on the 15-acre and 1.159-acre tracts.) Judge Roy made the following findings in her memorandum opinion:

> The Court's task here is made more difficult by the number of transactions and the lack of precision in the drafting of the accompanying documents. The Court finds that in balancing the equities of this web of transactions the scales tip considerably in favor of plaintiff. From all that has been presented, the Court finds that it was the intent of the parties to these transactions that plaintiff maintain its superior position with respect to its liens on the subject property. Although somewhat dated, and from a case involving different facts, the Court finds the following language of the Arkansas Supreme Court persuasive herein:
>
> > [I]n the absence of an agreement, or a plain manifestation of a contrary intention, the security of the original mortgage follows the note or renewal thereof. In other words, instead of there being a presumption of payment or settlement of the original indebtedness by the execution of the renewal note, and thereby a release of the security, the presumption is that, upon the execution of the new note or bond, the same security is available for its payment.
>
> *Simpson v. Little Rock—North Heights Water Dist. No. 18*, 191 Ark. 451, 86 S.W.2d 423, 425 (1935), citing *Oliphint v. Eckerley*, 36 Ark. 69 (1880).
>
> The Court finds that plaintiff's rights in the one acre

tract are prior and paramount to that of Marbella, and that Marbella acquired this property subject to plaintiff's interests. Likewise, plaintiff's rights in the lease on the convenience store are prior and paramount to that of Coleman's. Plaintiff is entitled to Judgment of Foreclosure on its interests in both of these properties.

On January 24, 1992, Judge Roy issued a supplemental opinion to reflect that Marbella's unsuccessful efforts to purchase the interest of the FDIC in the subject properties terminated in March 1990; that Marbella acquired the fee simple interest in the one-acre parcel in a series of transactions between December 20 and 28, 1989; and that Marbella acquired by quitclaim deed the leasehold interest of Messrs. Lee and Denton and Dr. Wegener in the one-acre tract on March 30, 1990.

In the supplemental opinion, Judge Roy stated:

Finally, in its Motion for Clarification, Marbella asks the Court to clarify its holding concerning the interest and rights of the FDIC in and to the one-acre tract. Upon reflection, the Court should have set out its findings and conclusions with greater precision and specificity. It was not the Court's intention to place plaintiff in a greater position than it otherwise occupied by virtue of its interest in certain leases on this property and any mortgages thereon. However, the Court did intend to put plaintiff in the position it would have occupied had all of its rights been honored. The following shall constitute the supplemental findings and conclusions of the Court and shall have same force and effect as the terms of the original Opinion.

By assignment from D'Jer, Inc., plaintiff acquired an interest in the lease on the one-acre tract between Fred McDonald, special administrator of the Estate of Julian Leland Rutherford, deceased, and Baldwin Petroleum Company, Inc. dated June 24, 1971, which ran until July 6, 1991. As assignor, plaintiff had the right pursuant to paragraph 11 to renew or extend the lease for a period of five years. In addition, paragraph 18 provides that "[i]n the event the grantor desires to sell the above described real property during the initial and extended term of this agreement the grantee shall have the first option to purchase said property

for the highest bona fide purchase price offer ....." Rather than offer the property to plaintiff, the owners sold it to Marbella in December of 1989, clearly within the initial term of the lease.

Upon consideration of all the pleadings and evidence presented, the Court finds that plaintiff was wrongfully denied its first option to purchase the property under the lease. After plaintiff has tendered the 1989 sale amount, plus interest at ten percent per annum, to Marbella, within three business days thereafter Marbella shall convey its interest in the one-acre tract to plaintiff.

On March 25, 1992, Judge Roy issued a judgment of foreclosure and held that all interest claimed by appellant, whether pursuant to the lease, amendment to lease, or otherwise, is subject and subordinate to the interest of the FDIC and thereby subject to foreclosure. Judge Roy specifically adopted her findings in the October 28, 1991, memorandum opinion and stated: "[T]he June 1, 1989, Amendment To Lease was procured and entered into without any approval from, or notice to, Audubon or its receiver, the FDIC, formerly the FSLIC, in spite of the assignment and pledge to Audubon of all rents and profits under the Lease." In this judgment, Judge Roy decreed that its filing in the real estate records of Monroe County would constitute a complete and absolute conveyance to the FDIC of all of Marbella's interest in the one-acre parcel. She also directed Marbella to execute and deliver a special warranty deed to the FDIC and to negotiate a check in the amount of $89,306.85 which was tendered pursuant to court order. She held that all of the FDIC's rights in the one-acre parcel were thereby vested absolute and paramount to Marbella.

Appellant appealed Judge Roy's decision to the Eighth Circuit Court of Appeals and argued three points:

(1) Audubon had notice of and gave approval to the amendment of the lease agreement entered into by Coleman and Lee, (2) the court did not possess jurisdiction to decide the issue of whether Coleman breached the lease agreement because the court has previously dismissed that issue, (3) the district court erred in determining that the sublease was subordinate and subject to foreclosure by the FDIC because Audubon's rights under the 1984 deed were destroyed when

it restructured the loan in 1986.

*Federal Deposit Insurance Corporation* v. *Lee*, 988 F.2d 838, 841 (8th Cir. 1993). Apparently, appellant did not argue that Judge Roy had erred in dismissing paragraphs 33 and 34 of the third amended complaint. Appellant did argue that, by dismissing paragraphs 33 and 34, the district court could not make any findings as to whether the lease was breached. The Eighth Circuit Court of Appeals disagreed:

> Coleman argues, however, that the district court's finding on the issue of notice and approval is also legally erroneous. Coleman contends that the ruling is legally erroneous because the court, on February 8, 1991, dismissed portions of paragraphs 33 and 34 of plaintiff's third amended complaint that dealt with the default and breach of the lease.[1] This dismissal, Coleman asserts, precluded any findings the court could make at the foreclosure proceedings with regard to whether the lease was breached. Therefore, Coleman contends, because the issue of notice and approval relates to the issue of whether the lease was breached, the trial court lacked jurisdiction to decide the issue.

> We acknowledge that the trial court dismissed certain portions of the complaint which addressed whether there was default and breach under the lease. However, we also note that portions of the complaint that the trial court did not dismiss presents the issue of whether the lease was amended without notice to or the approval of Audubon or its receiver. Specifically, paragraph 31 states that "without any notice whatsoever to Plaintiff" the defendants Coleman and Hercoleed "unilaterally entered into an agreement attempting to modify and amend the convenience store lease." That paragraph further alleges that at the time of this attempted modification, Hercoleed was in default "under the terms of the restructured financing on the project." Plaintiff then alleges that the amendment is void *ab initio*. As this paragraph was not dismissed, the issue of notice and approval

---

[1] The trial court dismissed those portions of the paragraphs because the issues of default and breach related to an Unlawful Detainer suit that was pending in state court in Monroe County, Arkansas.

was properly before the court. Accordingly, the trial court had jurisdiction to decide the issues.

988 F.2d at 842.

On January 23, 1992, the circuit court dismissed appellant's counterclaim and third-party complaint based upon lack of subject-matter jurisdiction under Ark. R. Civ. P. 12(b)(1). The circuit court entered an order under Rule 54(b) of the Rules of Civil Procedure on February 7, 1992, and held that it would be highly prejudicial for appellees to proceed to trial and obtain judgment against appellant without appellant first having a final adjudication of its right to assert its counterclaim and third-party complaint.

Appellant then filed a notice of appeal, reciting that it appealed from "all orders and judgments entered herein." On appeal to this Court, however, appellant failed to challenge the dismissal of its counterclaim and third-party complaint. Instead, it argued the following four points: (1) this court had no jurisdiction of the subject matter because the dismissal of the issues relating to the D'Jer-Coleman lease from the federal case did not permit refiling of these issues in a state court; (2) the trial court erred in refusing to set aside the "judgment" rendered in favor of appellees against appellant at the hearing; (3) the restructuring of the original indebtedness to FDIC by Audubon was a novation; and (4) the order of the court finding that the supersedeas bond proffered by appellant was not timely filed and did not otherwise comply with the statute was clearly erroneous.

In our opinion, we noted that appellant had argued issues that were totally unrelated to the interlocutory order from which it had been given permission to appeal:

> The issues Coleman's raises, however, are totally unrelated to the interlocutory order that it has been permitted to appeal. All of the issues raised relate to the primary cause of action, the suit for unlawful detainer, which is still pending in the circuit court. In the language of Rule 54(b) no "final judgment as to" this "claim" has been entered by the trial judge. Our view is that when the trial court permits an interlocutory appeal under Rule 54(b) the issues raised must be reasonably related to the order or orders appealed from. A Rule 54(b) order may not be used as a vehicle to bring up for review matters which are still pending before the trial court.

> Because there is no contention that the trial court erred in dismissing the appellant's counterclaim and third-party complaint, the decision of the trial court is affirmed.

44 Ark. App. at 49.

The Arkansas Supreme Court granted appellant's petition for review in part and stated: "The result of the case is corrected and modified to the extent that it is dismissed rather than affirmed." *Coleman's Serv. Center, Inc.* v. *Southern Inns Management, Inc.*, 93-1285, slip. op. (Ark. January 10, 1994).

Upon remand, the circuit court granted the FDIC's motion in limine to prevent appellant from introducing evidence respecting the purported amended lease as a defense to the FDIC's claims because Judge Roy had found that the amendment to the lease was done without any approval from, or notice to, FDIC or its receiver. The FDIC's claim for damages resulting from appellant's failure to pay rent according to the original sublease was tried to the circuit court on October 28, 1994. On January 11, 1995, the circuit judge held that the FDIC was entitled to damages against appellant in the amount of $123,135.29. He denied the FDIC's request for treble damages.

On appeal, appellant raises four points: (1) the circuit court erred in holding that it had subject-matter jurisdiction because the dismissal of the issues relating to the D'Jer-Coleman lease from the federal case did not permit refiling in state court; (2) the circuit court erred in refusing to set aside the "judgment" rendered against appellant pursuant to the 1991 hearing; (3) the circuit court erred in finding that the supersedeas bond proffered by appellant did not comply with the applicable statute; and (4) the circuit court erred in refusing to admit evidence of appellant's unjust-enrichment defense.

In its first point on appeal, appellant contends that appellees should have brought all of their claims for relief in one action against appellant. It argues that the FDIC improperly split its cause of action by pursuing the unlawful-detainer action in addition to the original federal foreclosure action. However, we conclude that this case falls within an exception to the general rule against splitting a cause of action: because Judge Roy specifically stated that she dismissed paragraphs 33 and 34 of the FDIC's third amended complaint "without prejudice," the FDIC could file this unlawful-detainer action and obtain a judgment for rent arrearages in circuit

court.

Under the claim-preclusion aspect of the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. *Magness v. Commerce Bank*, 42 Ark. App. 72, 78, 853 S.W.2d 890 (1993). *Res judicata* bars not only the relitigation of claims which were actually litigated in the first suit but also those which could have been litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Magness v. Commerce Bank*, 42 Ark. App. at 78; *Swofford v. Stafford*, 295 Ark. 433, 435, 748 S.W.2d 660 (1988). The cases dealing with this issue do not draw a distinct line beyond which the principle of *res judicata* invariably applies and where it does not; the very nature of litigation makes that impossible. *Golden Host Westchase, Inc. v. First Serv. Corp.*, 29 Ark. App. 107, 119, 778 S.W.2d 633 (1989). The doctrine of *res judicata* applies only when the party against whom the earlier decision is being asserted had a fair and full opportunity to litigate the issue in question. *Cater v. Cater*, 311 Ark. 627, 632, 846 S.W.2d 173 (1993).

The doctrine of collateral estoppel or issue preclusion bars the relitigation of issues of law or fact actually litigated by parties in the first suit. *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 635-36, 855 S.W.2d 941 (1993); *Arkansas Dep't of Human Servs. v. Dearman*, 40 Ark. App. 63, 66, 842 S.W.2d 449 (1992). When an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. at 636. Collateral estoppel is based upon the policy of limiting litigation to one fair trial on an issue and is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Arkansas Dep't of Human Servs. v. Dearman*, 40 Ark. App. at 66. For collateral estoppel to apply, the following elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the

determination must have been essential to the judgment. *Crockett & Brown, P.A.* v. *Wilson*, 314 Ark. 578, 581, 864 S.W.2d 244 (1993). In *Finch* v. *Neal*, 316 Ark. 530, 538, 873 S.W.2d 519 (1994), the supreme court stated that the test in determining whether *res judicata* applies is whether matters presented in a subsequent suit were necessarily within the issues of the former suit and might have been litigated therein.

In *Carter* v. *Owens-Illinois, Inc.*, 261 Ark. 728, 729, 551 S.W.2d 209 (1977), the supreme court stated that identical cases between the same parties can be pending in a federal district court and a state court at the same time. In such a situation, the first forum to dispose of the case by trial enters a judgment that is binding on the parties. *Id.* at 729-30. *See also Country Pride Foods, Ltd.* v. *Medina & Medina*, 279 Ark. 75, 78, 648 S.W.2d 485 (1983).

It should be noted that an unlawful-detainer action is quite limited in scope. Arkansas Code Annotated § 18-60-308 (1987) provides: "In trials under the provisions of this subchapter, the title to the premises in question shall not be adjudicated upon or given in evidence, except to show the right to the possession and the extent thereof." *See also Cortiania* v. *Franco*, 212 Ark. 930, 934, 208 S.W.2d 436 (1948); *Williams* v. *Prioleau*, 123 Ark. 156, 161, 184 S.W. 847 (1916). Additionally, Ark. Code Ann. § 18-60-312(a) (1987) provides: "Neither the judgment to be rendered by the court in matters brought pursuant to the provisions of this subchapter nor anything in this subchapter shall bar or preclude the party injured from bringing any cause of action for trespass or ejectment, or any other action, against the offending party." A final judgment was first rendered, however, in the federal court action. Our focus, therefore, must be upon the *res judicata* effect of that judgment on this action.

A person having only a single cause of action is usually not permitted to split up the cause of action and maintain more than one suit for different parts of the action; if this rule is violated, it is held that the adjudication reached on the first action is, under the doctrine of *res judicata*, a bar to the maintenance of the second suit. 1 Am. Jur. 2d *Actions* § 110 (1994). In *Eiermann* v. *Beck*, 221 Ark. 138, 252 S.W.2d 388 (1952), it was held that a plaintiff-buyer who had obtained rescission of a contract to purchase a restaurant plus consequential damages could not later sue for other damages resulting from the defendant-seller's fraud. The court stated:

Our cases do not draw a distinct line beyond which *res judicata* invariably applies and within which it does not. The very nature of litigation makes that impossible. The rule, however, seems to be that if the forum selected by the plaintiff has jurisdiction of the person and the subject-matter, and the parties in each instance are the same, and if claims that were made or could have been made grew out of the same transaction, then it is the duty of the aggrieved party or parties to include in one action all rights subject to judicial determination at the time suit was brought, thus preventing multiple litigation.

221 Ark. at 141.

In *Lisenbey v. Farm Bureau Mutual Insurance Co. of Arkansas, Inc.*, 245 Ark. 144, 431 S.W.2d 484 (1968), the supreme court held that claims resulting from the loss of personalty and realty in one fire covered by one insurance policy constituted one cause of action:

Needless to say, the rule against the splitting of a single cause of action is intended to keep defendants from being harassed by a multiplicity of suits and to lighten the already overcrowded dockets of the trial courts. In finding the existence of a single cause of action we have placed some emphasis upon the fact that the several claims arise from a single transaction. *Eiermann v. Beck*, 221 Ark. 138, 252 S.W.2d 388 (1952). In the case at bar we are firmly of the view that the fire created only one cause of action and that the plaintiffs ought not to be permitted to subdivide that cause of action, thereby burdening the defendant and the courts with the waste of time and expense that attends a needless jury trial.

245 Ark. at 146.

In his treatise, *Arkansas Civil Practice and Procedure* (1993), Justice David Newbern states:

[A] claimant may not split a claim or cause of action by attempting to bring a portion of it in one action and a portion in another. According to the rule of *res judicata*, the second attempt will be considered merged in the first or barred by it.

The purposes underlying this rule are to protect those against whom split causes of action would be levied from

having to defend twice and to protect court dockets from unnecessary burdens.

*Id.* at § 3-7.

 It has been said that, in order to determine whether a second action is for the same cause of action as the first, one should consider the identity of facts essential to their maintenance, and whether the same evidence would sustain both. *See Chiotte v. Chiotte,* 225 Ark. 101, 102, 279 S.W.2d 296 (1955); *Lee v. Westbrook,* 208 Ark. 914, 917, 188 S.W.2d 141 (1945). "Whether a factual grouping constitutes a 'transaction' for purposes of *res judicata* is to be determined pragmatically, by considering whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit and whether treatment of the facts as a unit conforms to the parties' expectations for business understanding or usage." 46 Am. Jur. 2d *Judgments* § 533 (1994). "In the context of *res judicata,* a contract is typically considered to be a 'transaction' so that all claims arising from the breach of the contract must be brought in the original action, as well as all defenses." *Id.* at § 529.

The Restatement (2d) of Judgments has adopted a "transactional" approach in determining whether a claim is barred by *res judicata*:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (2d) of Judgments § 24 (1982).

In Section 25, the Restatement (2d) of Judgments provides exemplifications of the general rule concerning splitting:

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action.

This section is explained in comment e:

*State and federal theories or grounds.* A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

 The doctrine of *res judicata*, however, does not bar a subsequent action where, in an earlier action, a court has made an express reservation of right as to future litigation or where a party was actually prohibited from asserting a claim. *Cater* v. *Cater,* 311 Ark. at 632. *See also Thornbrough v. Barnhart,* 232 Ark. 862, 866, 340 S.W.2d 569 (1960). It has been held that an express reservation of rights as to litigation on a certain item preserves that subject for future adjudication. *Miles* v. *Teague,* 251 Ark. 1059, 1061, 476 S.W.2d 245 (1972). *See also Kulbeth v. Purdom,* 305 Ark. 19, 22, 805 S.W.2d 622 (1991); 50 C.J.S. *Judgments* § 641 (1947).

Section 26(1)(b) of the Restatement (2d) of Judgments sets forth an exception to the general rule concerning splitting that controls our disposition of this appeal. It provides:

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a

second action by the plaintiff against the defendant:

....

 (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action....

This subsection is explained in comment b as follows:

> *Express reservation by the court (Subsection (1)(b)).* It may appear in the course of an action that the plaintiff is splitting a claim, but that there are special reasons that justify his doing so, and accordingly that the judgment in the action ought not to have the usual consequences of extinguishing the entire claim; rather the plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action. A determination by the court that its judgment is "without prejudice" (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action.

 Under Section 24 of the Restatement (2d) of Judgments, this unlawful-detainer action would normally be barred under the rule against splitting a cause of action. However, because Judge Roy dismissed paragraphs 33 and 34 of the FDIC's third amended complaint in federal court against appellant "without prejudice," we conclude, pursuant to Section 26(1)(b) of the Restatement (2d) of Judgments, that appellees could entertain this action for unlawful detainer in circuit court. We therefore reject appellant's first point on appeal.

 In appellant's second point on appeal, it argues that the "judgment" that followed the hearing on February 12, 1991, addressed all issues in the case and awarded a monetary judgment to the FDIC. This is not correct. As we noted in the first appeal, an action for unlawful detainer under Ark. Code Ann. § 18-60-307 (Supp. 1991) is a two-step process. *Coleman's Serv. Center, Inc.* v. *Southern Inns Management,* 44 Ark. App. at 48. The statute contemplates that the right to possession will be preliminarily determined and, if appropriate, a writ of possession will be issued; however, the question of damages will be left for a subsequent hearing. *Id.* at 48-

49. The statute expressly provides that an order directing the issuance of a writ of possession shall not be a "final adjudication of the parties' rights in the action." *Id.* at 49. *See* Ark. Code Ann. § 18-60-307(d)(1). We stated: "In the case at bar, the parties are in the middle of the primary lawsuit. While the circuit court has directed the issuance of a writ of possession, its orders clearly contemplate a further hearing on the question of damages. A money judgment has not yet been entered." 44 Ark. App. at 49. In fact, the February 13, 1991, "judgment" specifically stated that appellees had presented "prima facie evidence" that they were entitled to judgment against appellant.

In any event, we need not address the second and third points on appeal because they are moot. A case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Stair* v. *Phillips*, 315 Ark. 429, 435, 867 S.W.2d 453 (1993). *See also Martin Farm Enters., Inc.* v. *Hayes*, 320 Ark. 205, 210, 895 S.W.2d 535 (1995). With few exceptions, the appellate court will not address moot issues. *Leonards* v. *E.A. Martin Machinery Co.*, 321 Ark. 239, 246, 900 S.W.2d 546 (1995); *Wright* v. *Keffer*, 319 Ark. 201, 203, 890 S.W.2d 271 (1995); *Kinkead* v. *Union Nat'l Bank*, 51 Ark. App. 4, 19, 907 S.W.2d 154 (1995). An exception is made to the mootness doctrine for cases that are capable of repetition yet evading review because the justiciable controversy will necessarily expire or terminate prior to adjudication. *Wright* v. *Keffer*, 319 Ark. at 203. This is not one of those cases. Even if we were to hold that the circuit judge erred in refusing to set aside the February 12, 1991, decision or to accept the supersedeas bond, no meaningful relief could be granted. Because of the decisions of the federal district court and the Eighth Circuit Court of Appeals, appellant can not be put back into possession of the property covered by the sublease.

In its fourth point on appeal, appellant argues that the circuit court erred in refusing to admit evidence of appellant's unjust-enrichment defense. Appellant asserts that it should have been allowed to introduce evidence of its performance pursuant to the amended lease in order to establish its "negative defense" to appellees' claim for back rent. Appellant does not argue that the amended lease is controlling; instead, it argues that evidence of its performance under the amended lease was admissible to prove that the FDIC would be unjustly enriched by receiving judgment for the

entire amount of damages due under the original sublease. Appellant, in anticipation of a response by the FDIC that it failed to properly plead the unjust-enrichment defense, argues that this defense did not have to be affirmatively pled. Appellant states that it is not making a claim for affirmative relief, but is merely setting forth its performance under the amended lease as a "negative defense."

■ We disagree. Here, appellant has attempted to utilize its unjust-enrichment defense as a set-off against the FDIC's award for back rent due under the original sublease. Under Ark. R. Civ. P. 8, set-off is an affirmative defense, which must be pled. The abstract contains no indication that appellant pled this set-off.

Appellant also argues that, even if it was required to affirmatively plead unjust enrichment as a defense, the parties impliedly treated it as having been pled. Appellant also asserts that it asked the circuit court to amend the pleadings to conform to the proof. Appellant states in its brief that, at the final hearing, it conceded that the amended lease was void but asked the circuit court to admit evidence of its performance under the amended lease to support its unjust-enrichment defense and cites pages 684-705 of Transcript Volume II. These pages of the transcript, however, are not abstracted by appellant.

■ Because appellant failed to abstract this part of the transcript, we need not address appellant's fourth point. Supreme Court Rule 4-2(a)(6) provides that the appellant's abstract of the record should consist of an impartial condensation, without comment or emphasis, of only such material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to the court for decision. Rule 4-2(b)(2) provides that, if this court finds the abstract to be flagrantly deficient, the judgment or decree may be affirmed for noncompliance with the rule. *See D. Hawkins, Inc.* v. *Schumacher,* 322 Ark. 437, 438, 909 S.W.2d 640 (1995); *Chrysler Credit Corp.* v. *Scanlon,* 319 Ark. 758, 761, 894 S.W.2d 885 (1995); *Stroud Crop, Inc.* v. *Hagler,* 317 Ark. 139, 142, 875 S.W.2d 851 (1994). In *Hunter* v. *Williams,* 308 Ark. 276, 277, 823 S.W.2d 894 (1992), the supreme court stated that it had pointed out repeatedly, "for a hundred years ... that there being only one transcript it is impractical for all members of the court to examine it...."

■ Even if we were to address this argument, however, we

would affirm. To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. *Dews* v. *Halliburton Indus., Inc.*, 288 Ark. 532, 536, 708 S.W.2d 67 (1986). The basis for recovery under this theory is the benefit that the party has received, and it is restitutionary in nature. *Id.* at 536-37. The doctrine of unjust enrichment had its origins in the action for money had and received, which was based upon the theory that there was an implied promise to pay. *Frigillana* v. *Frigillana*, 266 Ark. 296, 307, 584 S.W.2d 30 (1979).

■ One who is free from fault cannot be held to be unjustly enriched, however, merely because one has chosen to exercise a legal or contractual right. *Guaranty Nat'l Ins. Co.* v. *Denver Roller, Inc.*, 313 Ark. 128, 138, 854 S.W.2d 312 (1993). One is not unjustly enriched by receipt of that to which he is legally entitled. *Smith* v. *Whitener*, 42 Ark. App. 225, 228, 856 S.W.2d 328 (1993). It is generally held that, where there is an express contract, the law will not imply a quasi- or constructive contract. *Lowell Perkins Agency, Inc.* v. *Jacobs*, 250 Ark. 952, 959, 469 S.W.2d 89 (1971); *Friends of Children, Inc.* v. *Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603 (1994). It has been held that the quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties. *Lowell Perkins Agency, Inc.* v. *Jacobs*, 250 Ark. at 959. "[T]he law never accommodates a party with an implied contract when he has made a specific one on the same subject matter." *Id.* In *Moeller* v. *Theis Realty, Inc.*, 13 Ark. App. 266, 268-69, 683 S.W.2d 239 (1985), we stated that the concept of unjust enrichment has no application when an express written contract exists.

Affirmed.

ROGERS and GRIFFEN, JJ., agree.